JOHN P. BRANCH, plaintiff in error, *vs.* ALFRED BAKER, defendant in error.

MILES G. DOBBINS, plaintiff in error, *vs.* JOSIAH SIBLEY, defendant in error.

[These cases were argued at the January term, 1874, and the decision withheld.]

1. Actions brought by the *bona fide* holders of bank bills which were issued by the bank payable to bearer, and which passed into circulation

as money, cannot be controlled by the provisions of the second para. graph of the seventeenth section of article five of the constitution of 1868, nor can the illegality of such issue by the bank, as contemplated in said provision, be set up as a defense against the right of such holder to a recovery.

2. If said provisions of the constitution were intended to apply to such cases, they are void under the tenth section of the first article of the federal constitution, inasmuch as they not only annul subsisting contracts which were otherwise legal and valid, but impose upon the holder of such bills impracticable conditions in cases of certain defenses, and which practically deny all right of recovery.

3. The measure of recovery by the owners of bank bills in an action against a stockholder in the Mechanics' Bank is to be ascertained from the amount of outstanding bills of the bank at the time action is brought, and such stockholder's liability therefor is in proportion to his share of stock in the bank, subj-ct to be reduced by the amount of bills he has taken up before the commencement of the suit against him.

McCAY, Judge, dissented.

Constitutional law. Banks. Stockholders. Before Judge GIBSON. Richmond Superior Court. April Term, 1873.

It is only necessary to report the first of the above stated cases. The second is similar to it in all material respects.

Branch brought assumpsit against Baker, a stockholder in ths Mechanics' Bank, to recover the amount due on certain bills or notes issued by the said bank, and which came into the possession of plaintiff in due course of trade, and for a valuable consideration, making the sum of $36,680 00 besides interest; and for which judgment had been rendered in favor of said plaintiff against said Mechanics' Bank at a previous term of said court, and executions issued thereon, which had been returned with the entry of *nulla bona* thereon, previous to the commencement of said suit.

The defendant pleaded as follows:

1st. That the evidences of indebtedness, to-wit: the bank bills on which said suit is predicated, and in said plaintiff's declaration named, were given, used, issued, and put into circulation by the said Mechanics' Bank during the late rebellion against the United States, to-wit: on the 22d day of

October, 1861, with the intention and for the purpose of aiding and encouraging said rebellion.

2d. That said bills were last issued and put into circulation by the said Mechanics' Bank to the late so-called Confederate States government, through its officers and agents, during the late rebellion against the United States, to-wit: on the 22d day of October, 1861, and on divers other days during the same year, as a loan to said Confederate States, and that it was the purpose and intention of the said Confederate States government, and of the said officers and agents in procuring said loan and receiving said bills, to aid and encourage said rebellion, and that fact was known to the said Mechanics' Bank.

3d. That at the time said bills were last issued by said bank, the said bank was amply able to redeem and pay the same, and the said plaintiff, or those under whom he claims, failed, and neglected to demand payment thereof, with full knowledge that the means of said bank were constantly diminishing, until said bank failed and became insolvent.

4th. That said plaintiff is not a *bona fide* holder for value of said bills, and did not receive the same in due course of trade, nor while said bills were circulating as money, but that he bought the same on speculation, at a very low rate, to-wit: at not more than five cents on the dollar, and after the said bills had ceased to circulate as money, and said bank had ceased to do business.

5th. That the capital stock of said bank is five thousand shares, of the nominal value of $100 00 each, of which this defendant owns three hundred and eight shares, and that all the bank bills of said bank issued and unredeemed, amount to $1,500,000 00 or less, and that all of said bills were issued before the first day of June, 1865, and none of them on or since that day, and that against said bank no action had been brought on any of said bills prior to the first day of January, 1870, except on $500,000 00 thereof, or a less amount.

6th. That of the total amount of outstanding unredeemed bills of said bank, not less than $1,375,000 00 were issued to

Branch *vs.* Baker.

the Confederate States and the state of Georgia, during the late civil war, for the purpose, and with the intention and with the knowledge that they would be so used, to aid and encourage the rebellion then being made against the United States, and have not been re-issued since said illegal issue.

7th. That before the commencement of said suit, to-wit: on the 18th day of December, 1869, and on divers other days before the 31st day of December, 1869, this defendant paid and redeemed bills of said Mechanics' Bank, then outstanding and unredeemed, to the amount of $58,000 00.

The plaintiff demurred to the first plea of defendant, on the following grounds :

1st. The clause of the constitution of Georgia, section 17, paragraph 2d, on which the plea is based, does not embrace bank bills or notes.

2d. The plea does not allege that any contract was made between the plaintiff and defendant, or any other parties, with the intention and for the purpose of aiding and encouraging said rebellion ; nor that it was the purpose of any one of said parties to said contract to aid and encourage the said rebellion, such purpose being made known to the other party.

3d. Said clause of the constitution of Georgia is void, being in conflict with the constitution of the United States, as it impairs the obligation of these contracts.

And to the second plea on the same grounds.   And to the third, on the ground that it does not allege that the plaintiff was the holder of said notes or bills, at any time when said bank was able to pay and redeem the same.

And to the fourth, on the ground that it is not a proper defense to said action, plaintiff being a *bona fide* holder of said bank notes or bills, for value, and entitled to recover the full amount named on the face of said notes or bills.

And to the sixth, on the grounds of demurrer set forth to the first and second pleas.

And to the seventh, on the following grounds :

1st. Said defendant has not redeemed the said amount of bills named in his plea, at their value when first issued by

said bank, or at the value named on the face of said bills or notes; but that said defendant bought them at a depreciated rate since said bank became insolvent, to-wit: at not more than ten cents on the dollar, and after said bills had ceased to circulate as money, and said bank had ceased to do business.

2d. Said defendant is bound by the charter of said bank to redeem or pay the full value of said bills in proportion to his number of shares as a stockholder in said bank, as said value is stated on the face of said bills, at the time they were first issued by said bank.

3d. Upon the grounds of demurrer set forth to the 1st and 2d pleas of said defendant.

4th. Upon the ground that this suit is founded on a judgment against Mechanics' Bank, rendered in said superior court of Richmond county, at the ...... term ...... of said court; and the said defendant cannot set up as a defense to this suit any plea that would have been good as a defense to said judgment against said Mechanics' Bank, or that would collaterally attack or invalidate said judgment.

The court overruled the demurrers to defendant's pleas, except that to the fourth. To which ruling plaintiff excepted.

In the further progress of the cause, the following agreement of counsel as to the facts of the case, was submitted to the jury as evidence:

"In the suits in Richmond superior court, of John P. Branch against sundry parties (separate suits,) as stockholders of the Mechanics' Bank, in which the undersigned are opposing counsel, it is agreed that the following facts shall be considered in evidence—subject to objections to relevancy and legality—and subject also to be shown incorrect by either party by evidence.

"1st. That the Mechanics' Bank was incorporated, and issued notes for circulation.

"2d. That the several defendants in said suits are stockholders to the amounts stated in the several declarations.

"3d. That the plaintiff has the bills named in his suits,

Branch *vs.* Baker.

and had them at the commencement of his suits, and their production in court is dispensed with.

"4th. That the defendants who have pleaded payment of bills, have the amount of bills stated in their pleas, and their production in court is dispensed with—but the time when they obtained them is subject to proof.

"5th. That the total circulation unredeemed by the bank, but including what has been redeemed by stockholders, is $1,500,000 00; of which the sum of $675,000 00 was paid out by the bank to the late Confederate government as a loan, and the sum of $700,000 00 was in like manner paid out to the state of Georgia as a loan; all which loans were made between October 1st, 1861, and December 31st, 1862.

"6th. That the capital stock of the bank is $500,000 00.

"7th. That the judgments against the Mechanics' Bank amount to $97,483 00, all on bills. That there are in suit in the federal court, bills amounting to $13,000 00, and in the city court of Augusta, bills to the amount of $1,000 00. That there are now pending in Richmond superior court against said bank, on bills, the following suits: S. D. Heard, to the amount of $38,025 00; William Dougherty, to the amount of $22,181 00; Thomas P. Branch, to the amount of $96,-000 00; John P. Branch, to the amount of $50,000 00.

"That all the above suits were commenced before January 1st, 1870; besides which were commenced the following before January 1st, 1870, and have since that time been dismissed for want of prosecution: W. L. High, (two suits,) for $1,168 00; M. G. Dobbins, for $200,000 00; W. M. & R. J. Lowry, for $10,000 00; A. D. Cothran, for $2,295 00; Daniel Miller & Company, for $4,161 00; William Hazlehurst, for $22,180 00. Besides which no suits against said bank are pending.

"8th. That said bank suspended specie payment in December, 1860, and has never since resumed payment; and since the close of the late war has kept no place for banking business, and has ceased ever since that time to do business as a

bank; and that its bills have not circulated as money in ordinary business transactions since the war.

"9th. That plaintiff received his said bills since the war, and before the adoption of the present constitution, in the due course of business, and that he paid for them various prices varying from five to ten cents on the dollar.

"10th. That previous to the commencement of these suits against the several stockholders, plaintiff had obtained judgment on the bills sued on against the Mechanics' Bank, and that execution had issued thereon and had been returned by the sheriff of Richmond county, *nulla bona.*"

It was shown by evidence on the part of defendant that he had redeemed, *bona fide,* by purchase at from six to twelve cents on the dollar, bills of said bank previously unredeemed, to the amount of $95,802 00, of which the sum of $68,802 were purchased before the 31st of December, 1869, and the remainder since the commencement of this suit.

The plaintiff's counsel requested the court to charge the jury :

1st. That under the charter of the Mechanics' Bank, the stockholders, by the terms of said charter, are not sureties and only liable ultimately, but that they are primary debtors with the bank, and primarily liable to the billholders.

2d. That it does not matter what the holders of the bills paid for them, they will not be restricted in their recovery to that price, but are entitled to the full amount expressed upon the face of the bills; that the price paid for the bills can by no means affect the recovery, and the mere fact that the bills in this case were bought at a low rate, to-wit: at five to ten cents on the dollar, would not affect the right of the plaintiff to the amount expressed upon the face of said bills.

3d. That a stockholder of the Mechanics' Bank cannot set up as a defense to a suit by a *bona fide* holder for value of notes of the bank, and who holds a judgment against said bank, the amount of the notes redeemed by him, but said plaintiff is entitled to recover the full value of the face of the notes which he holds.

4th. That even if a stockholder might set off against the suit of a *bona fide* holder of the notes of the Mechanics' Bank, the amount of the notes of said bank redeemed by him, when it appears from the evidence that said stockholder bought said bills for less than the value expressed upon their faces, he will be restricted to the amount paid by him for said bills or notes.

5th. That each stockholder of the Mechanics' Bank is liable to the *bona fide* holder for value of the bills or notes of said bank, for the full value expressed on the face of said bills without reference to the amount of the bills of said bank, which said stockholder may hold, no matter how he became possessed of them.

6th. That the clause of constitution, section 17th, paragraph 2d, is void, being in conflict with the constitution of the United States, because it impairs the obligation of these contracts.

7th. That said clause does not embrace bank bills or notes.

8th. That the Confederate government was an organized government; and that it was, to a certain extent, a *de facto* government.

9th. That plaintiff is presumed to be a *bona fide* holder of the notes in his hands, and that the clause in said constitution of Georgia does not apply to said notes, unless he was a party to such illegal contracts mentioned in said clause.

10th. That said clause did not embrace notes issued before the rebellion, nor any notes, unless the jury find that they were made, or some of them, by either or both parties, with the intention and for the purpose of aiding and encouraging the rebellion, and so known to the other party; or first, that there was such illegal principal contract made during the rebellion; and then, second, that the notes sued on, or some of them, were executed at the same time, or since said principal illegal contract was made by said parties, or either of them, in connection therewith or as consideration therefor, or in furtherance of said principal contract.

11th. That a re-issue of a bank note is not a making or execution thereof.

12th. That in this case, slight evidence is, if credible, sufficient to cast upon defendant the burden of proof of his defense by testimony in support of his plea; that the jury may look to the dates of the official connection of the different officers of said Mechanics' Bank, and their deaths, in considering the question as to when said bills were made or executed.

13th. That the mere circulation of said bills among private persons, for lawful purposes during the rebellion, was not and is not illegal.

14th. That although the bills sued on may have been issued during the war, for the purpose of aiding the rebellion, and on that account illegal, still, in the hands of a *bona fide* purchaser, for value, without notice, they will be upheld, and the holder will be entitled to recover.

Which charges the court refused to give, except the first and second. To which ruling the plaintiff excepted.

The court, at the request of the defendant's counsel, charged the jury:

1st. That under the constitution of the state, and the pleading in this case, the plaintiff cannot recover, unless he proves that the bills, which are the foundation of this suit, were not issued in aid of the rebellion against the United States.

2d. That in any event the plaintiff is only entitled to recover such a sum as bears the same proportion to the whole amount of bills in circulation, less the amount proved to have been issued to the Confederate and State governments in aid of the war against the United States, as the defendant's stock bears to the whole capital of the bank.

3d. That the plaintiff can only recover the proportion above stated of such bills of the bank as were sued on, on or before January 1, 1870.

4th. That if the defendant has redeemed as large a proportion of all the bills of the bank outstanding as his stock bears to all the stock of the bank, he is liable for no more of said bills.

Branch *vs.* Baker.

To which charges the plaintiff excepted. The jury found a verdict for the defendant.

Error is assigned by the plaintiff upon each of the aforesaid grounds of exception. And defendant excepted to the rulings and decisions of the court as follows:

1st. Defendant requested the court to charge the jury, that if said bills are held to have been illegally issued, but it is held that plaintiff can recover, as a *bona fide* holder, he can only recover, as such, the price he paid for them with interest; which charge the court refused to give.

2d. Defendant requested the court to charge, that if defendant has redeemed the bills of said bank to the full amount for which he is liable under the charter, there can be no recovery against him; which the court refused to give so far as relates to bills purchased since the commencement of the suit.

Upon both of which exceptions error is assigned by the defendant.

HENRY W. HILLIARD; Z. D. HARRISON, for plaintiff in error in first case.

A. T. AKERMAN, for plaintiff in error in second case.

W. T. GOULD; W. H. HULL, for defendants in error in both cases.

WARNER, Chief Justice.

The Mechanics' Bank was chartered prior to the war, and authorized to issue bills to circulate as money. By the terms of its charter "the persons and property of the stockholders, for the time being in said bank, shall be pledged and bound in proportion to the amount of the shares that each individual or company may hold in said bank, for the ultimate redemption of the bills or notes issued by or from said bank during the time he, she or they may hold such stock, in the same manner as in common commercial cases, or simple cases

of debt." When the stockholders accepted the charter of the bank it became a contract between them and the state, by which they were bound, in accordance with the terms thereof. The plaintiffs in the several suits now before the court are the billholders of the bank, suing on *that* contract, and are endeavoring to enforce the same. . The pleas of the defendants do not allege *that contract* to have been illegal, because it was in aid of the rebellion, and if the several matters of defense set forth in the defendants' pleas are authorized by the seventeenth section of the fifth article, paragraph two of the constitution of 1868, the same is unconstitutional and void as to contracts made prior to the date thereof, because it impairs the obligation of the contract sued on by creating a defense to that contract, which did not exist when the contract was made, and otherwise invades the rights of the plaintiffs as to their remedy to *enforce* that contract, which did not exist at the time the contract was made. The pleas of the defendants and the evidence offered thereunder as to the illegality of the contract sued on by the plaintiffs, constituted no legal or valid defense thereto as against the plaintiffs, who are the holders of the bills of the bank issued in pursuance of its charter.

If the stockholders of the bank had redeemed bills of the bank prior to the commencement of the plaintiffs' suits, to the amount of their respective shares of stock therein, or a proportional part thereof, then such stockholders might plead such redemption of the bills of the bank in discharge of their liability as stockholders to the extent of such redemption of the bills of the bank by them, before the commencement of the plaintiffs' suits. The plaintiffs, as the billholders of the Mechanics' Bank, are entitled to recover from the stockholders thereof, in the proportion which the amount of the shares that each individual stockholder held in said bank bore to the indebtedness of said bank to the billholders thereof, at the time of the commencement of the respective suits against the bank and the stockholders therein, for the redemption of the bills issued by the bank in pursuance of the terms of its charter. In

Branch *vs.* Baker.

other words, whatever amount the bank was indebted to the billholders thereof at the time of the commencement of the plaintiffs' suits on their bills, the stockholders are liable to redeem the same, in proportion as their respective shares of stock in said bank bears to the indebtedness of the bank to the billholders thereof—that is the measure of their liability under the charter of the bank as accepted by them.   In my judgment, the judgment of the court below should be reversed in each of the cases against the stockholders of the Mechanics' Bank, as well as that against the Mechanics' Bank.

Judgment reversed.

TRIPPE, Judge, concurred in the first case as follows:

1. Actions brought by the *bona fide* holders of bank bills which were issued by the bank payable to bearer, and which passed into circulation as money, cannot be controlled by the provisions of the second paragraph of the seventeenth section of article five, of the constitution of 1868, nor can the illegality of such issue by the bank, as contemplated in said provision, be set up as a defense against the right of such holder to a recovery.

2. If said provisions of the constitution were intended to apply to such cases, they are void under the tenth section of the first article of the federal constitution, inasmuch as they not only annul subsisting contracts which were otherwise legal and valid, but impose upon the holder of such bills impracticable conditions in cases of certain defenses, and which practically deny all right of recovery.

3. The measure of recovery by the owners of bank bills in an action against a stockholder in the Mechanics' Bank, is to be ascertained from the amount of outstanding bills of the bank at the time such action is brought, and such stockholder's liability therefor is in proportion to his share of stock in the bank, subject to be reduced by the amount of bills he has taken up before the commencement of the suit against him.

In the second case, as follows:

I concur in the judgment rendered in this case on the grounds and for the reasons I give for the decision in the case of *Branch vs. Mechanics' Bank*, 52*d Georgia Reports*, 525.

McCAY, Judge, dissented in both cases.