## BANK OF CULLODEN *v.* BANK OF FORSYTH.

1. Where notice of a by-law lien is given in the face of a stock certificate, the transferee takes subject to any debt due by the stockholder to the corporation at the time of the transfer, or which may arise before the corporation has notice of the transfer of the scrip.
2. But where the certificate makes no reference to the existence of the lien, a pledgee or transferee of corporate stock is not affected by the terms of a by-law lien of which he has no notice.
3. A statement in a stock certificate that the same is " transferable only on the books of the corporation, in person or by attorney, on surrender of the certificate " does not charge the transferee with notice of what is on the books of the company, or of the existence of the lien, or of the fact of the stockholder's indebtedness to the company.
4. The provision that stock is transferable only on the books is intended primarily for the protection of the corporation; but where there has been an otherwise valid transfer, the same may be good between third parties without an entry on the books of the corporation.
5. Such transfer is not necessarily made on the back of the scrip. A statement in a collateral note that the stock has been deposited as security for the debt, and that on default the lender might sell at public outcry and purchase, is sufficient to give the purchaser at the sale a title which will support a demand for a transfer and a new certificate.

6. The measure of damages for the failure to make a transfer and issue a certificate to the :purchaser is the value of· the stock [at the time of the demand and refusal.

Argued June 10, — Decided July 13, 1904.

Complaint.   Before Judge Clark.   City court of Forsyth. September 8, 1903.

The Bank of Culloden was incorporated October 11, 1897, under the provisions of the Civil Code, §§ 1903 . et seq.   On January 6, 1898, it adopted the following by-law :   " No transfer of stock shall be valid until entered on the books of the bank and all arrearages paid.   Such transfer must be made at least 15 days before an election, to entitle the holder thereof to vote; and it is expressly understood that this bank has a lien on all stock to the extent of indebtedness of each or any stockholder, whether such indebtedness is due or is to become due."   The Allen Merchandise Company owned six shares of the stock, and was indebted to the bank.   The stock-certificate was silent as to the lien, but had the usual provision that the stock was " transferable only on the books of the corporation, in person or by attorney, on surrender of the certificate."   On February 12, 1902, the owner deposited the certificate with the Bank of Forsyth, as security for a loan of $540, represented by a note for that amount.   There was no transfer on the back of the scrip.   The note, however, was on a printed form which stated, among other things, that the stock had been deposited as security for the debt, and that on default the bank was authorized to sell without advertisement, and to become the purchaser.   The debtor having made default, the Bank of Forsyth advertised the stock for sale, and at the time and place of the sale the Bank of Culloden caused notice to be given of the existence of the by-law, and of the fact that the Allen Merchandise Company was still indebted to it.   The sale proceeded, and the Bank of Forsyth bought.   It presented the scrip and evidence of the purchase to the Bank of Culloden, and demanded a transfer on the books of the bank, and a new certificate, which the Bank of Culloden refused on the ground of "*its* prior lien on said stock."   The Bank of Forsyth thereupon brought suit against the Bank of Culloden for the value of the stock. ·  On the foregoing facts, which were submitted to the judge of the city court of Forsyth without a jury, he rendered a

judgment in favor of the plaintiff, for the market price of the stock, $660. The Bank of Culloden excepted. It contended that the stock was not negotiable; that there was an imperfect transfer; that the Bank of Forsyth acquired no interest and no power to sell; that such transfer as was made was inferior to the charter and by-law lien, and that the title acquired at the sale was likewise inferior to the lien of the Bank of Culloden; and that in any event the Bank of Forsyth could only recover the amount of its debt, $540, and not the market value of the stock.

*Hardeman & Jones* and *Davis & Turner*, for plaintiff in error.
*Robert L. Berner*, contra.

LAMAR, J. (After stating the foregoing facts.) The Bank of Culloden was incorporated under the Civil Code, § 1903, and not under the act of 1891 (Acts 1890–1, p. 172). It can not, therefore, claim a charter lien by virtue of the amending act approved December 20, 1893 (Acts 1893, p. 78). Its defense to the present suit must rest solely upon the by-law lien, under the Civil Code, § 2825. If the face of the scrip had indicated the existence of such lien, every purchaser or pledgee would thereby have been put on inquiry, and would have taken subject to the claim of the bank for any debt due at the date of the transfer, and subject to any debt that might arise between the holder of the stock and the bank before the latter received notice of a sale or a pledge. But the same reasons which protect bona fide purchasers against secret liens generally apply with peculiar force to prevent the enforcement of secret incumbrances on corporate shares. For while they are not negotiable in the full sense, yet the custom of business, the necessities of commerce, and the multitude of transactions tend more and more to force the transfer of stock under the rule applicable to the sale of negotiable instruments. Indeed, the Civil Code, § 2825, recognizes that the by-law lien would not be good as against a creditor without notice. It being admitted that the Bank of Forsyth in the present case was an innocent pledgee, on that branch of the case it must prevail, unless, as claimed by the plaintiff in error, the words "transferable only on the books of the corporation, in person or by attorney, on surrender of the certificate," charged the pledgee with notice of what could be learned by examining the books, including the by-law, and the amount of

the bank's claim against the Allen Merchandise Company.   Exactly the contrary was true.   The notice, instead of operating only as a warning of the company's rules, was also a promise that the bank would not make a transfer to any one who did not produce and surrender the scrip itself.   Bank *v.* Lanier, 11 Wall. 378. When, therefore, the pledgee received the certificate, it took that which the Bank of Culloden recognized as the main muniment of title.   And while, for the purpose of sending notices of meetings, paying dividends, voting, and the like, the transfer on the books was important between the bank and the stockholders, yet, as between the buyer and the seller, the title could pass and the transfer be otherwise completed.   Civil Code, § 1855.   In some jurisdictions the title may pass upon the payment of the purchase-money and the delivery of the certificate, without any written assignment ; in others, by the delivery of the certificate with an assignment thereof on the same or on a separate paper.   Here there was a delivery, an assignment by the very terms of the note secured by the stock, and a power of attorney therein to make sale on default.   This was sufficient between the borrower and the lender ; and after default and a sale under the power, the purchaser was entitled to a transfer on the books, and a new certificate.   Had the pledgee demanded a transfer before the sale, the measure of damages for a failure to comply would have been his debt and interest.   But at the sale it acquired the pledgor's title free from any equity of redemption, and the measure of damages for the refusal to make the transfer was the value of the shares at the time of the refusal.   3 Clark and Marshall on Private Cor. §§ 602, 603 b, 582.        *Judgment affirmed.   All the Justices concur.*