IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

FEBRUARY TERM, 1906.

---

THE MAYOR AND ALDERMEN OF JERSEY CITY v. NORTH
JERSEY STREET RAILWAY COMPANY.

Argued November 9, 1905—Decided June 11, 1906.

1. The supplement to the act concerning corporations, passed April 21st, 1876, which authorizes the extension of corporate existence, is a general law, and, consequently, not violative of the provision of paragraph 11, section 7, article 4 of the state constitution, which prohibits the passing of special acts conferring corporate powers.

2. The act authorizing the formation of traction companies for the construction and operation of street railways, or railways operated as street railways (*Gen. Stat.*, p. 3235), confers upon any corporation formed under it the right to take possession of any existing street railway, or railway operated as a street railway, provided it obtains the consent of the party who owns, leases or operates it, and grants to such corporation all the powers and franchises necessary for the proper maintenance and operation of the railway, after it has acquired its possession, without regard to whether or not its predecessor was clothed with such powers and franchises.

---

On motion for leave to enter judgment on special verdict.

175

Before GUMMERE, CHIEF JUSTICE, and Justices HEN-DRICKSON and PITNEY.

For the plaintiff, *George L. Record* and *Gilbert Collins.*

For the defendant, *Sherrard Depue, Frank Bergen* and *William D. Edwards.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendant company oper-ates a street railway system in the city of Jersey City, and occupies with its tracks and fixtures a certain part of one of the public highways of the city known as Montgomery street, and this action is brought by the municipality to test the com-pany's right to continue in possession of the designated por-tion of that street.

It appears from the special verdict that on the 15th day of March, in the year 1859, the Jersey City and Bergen Railroad Company was incorporated under a special charter granted to it in that year by the legislature; that by its charter and the supplements thereto it was authorized to construct and operate a street railway through certain streets in Jersey City, including that portion of Montgomery street which is involved in this litigation, provided it first obtained the con-sent of the municipality; that the municipal consent was obtained and the road built by the company; that the term of the corporate existence of the company as fixed by its char-ter was twenty-five years; that on the 21st day of March, 1879, a certificate purporting to extend its corporate exist-ence for a period of fifty years, was filed by the company in the office of the secretary of state, under the authority of an act of the legislature, passed April 21st, 1876, which will be hereafter more specifically referred to; that on the 15th day of March, 1893, the Consolidated Traction Company was in-corporated under and by virtue of an act entitled "An act to authorize the formation of traction companies for the con-struction and operation of street railways, or railroads oper-ated as street railways, and to regulate the same," approved

March 14th, 1893 (*Gen. Stat., p.* 3235); that on the 25th day of September, 1893, the Jersey City and Bergen Railroad Company leased the railroads, with their equipment, owned and operated by it, to the Consolidated Traction Company in perpetuity; that on the 12th day of June, 1894, the defendant company was incorporated under and by virtue of the provisions of the aforesaid act of March 14th, 1893; that on May 25th, 1898, the Consolidated Traction Company executed a lease in perpetuity to the defendant company of all its railroads, with their equipment, including those which came to it by the lease from the Jersey City and Bergen Railroad Company; that the tracks laid by the Jersey City and Bergen Railroad Company in that portion of Montgomery street from which it is now sought to eject the defendant were used by it as a part of its railroad system from the time they were first laid until the execution of the lease by it to the Consolidated Traction Company; that after the execution of that lease the entire railroad system of the Jersey City and Bergen Railroad Company, including the *locus in quo,* went into the possession of the Consolidated Traction Company as lessee; that the latter company then proceeded to reconstruct so much of the railway as had been previously laid in Jersey City, and after its construction operated it until the execution by it of the lease to the defendant company; and that from that date until the commencement of this suit it has been operated by the defendant company.

The single ground upon which the city of Jersey City rests its right to terminate the occupation of Montgomery street by the defendant company with its railroad and equipment is that the corporate existence of the Jersey City and Bergen Railroad Company, and its right to the enjoyment of the franchises conferred upon it by its charter, came to an end by the express provision of its charter at the expiration of twenty-five years from the date of that instrument, viz., in the year 1884; and the contention is that neither the filing by it of the certificate of extension of corporate existence in 1879 nor the execution of the two leases referred to in the special verdict were operative to extend the right, either of

the Jersey City and Bergen Railroad Company or of its lessee or its sub-lessee, to occupy the *locus in quo* beyond the period fixed by its charter.

The filing by the Jersey City and Bergen Railroad Company in 1879 of the certificate extending its corporate existence was done in pursuance of the power conferred by the statute of this state passed April 21st, 1876, and entitled "A further supplement to an act entitled 'An act concerning corporations, approved April seventh, eighteen hundred and seventy-five,' authorizing extension of corporate existence." *Gen. Stat., p.* 972. That act provides "that it shall be lawful for any corporation heretofore or hereafter created under or by virtue of any law of this state, at any time before the expiration of its charter, or of the period named in its certificate of organization, to file in the office of the secretary of state a certificate under its common seal, attested by the signature of its presiding officer, declaring its desire that the period of its existence as such corporation shall be extended for any time therein mentioned not exceeding fifty years; and that upon making and filing such certificate the period of the existence of such corporation shall be extended as declared in such certificate, as fully as if the said period had been named in the original charter or certificate of organization of such corporation." The position taken by counsel for the plaintiff is that this legislative attempt to confer upon the corporations of the state power to extend the terms of their corporate existence is nugatory, for the reason that its effect is to confer upon every corporation which avails itself of the provision of the act corporate powers, and is consequently a violation of the last clause of paragraph 11 of section 7, article 4, of the state constitution, which declares that "the legislature shall pass no special act conferring corporate powers." The soundness of the plaintiff's position depends upon whether this statute is general or special. That it is general in form is apparent, for it applies to every corporation of the state, not only all those in existence at the time of the passage of the act, but all those which should thereafter come into existence. But it is contended on behalf

of the plaintiff that, although general in form, it is special in
its essence, for the reason that it extends the period of enjoy-
ment of the powers and franchises granted to the various
specially chartered corporations of the state, and so reconfers
upon those corporations the peculiar powers and franchises
originally invested in them.

It must be considered settled, so far as this court is con-
cerned, that an act which extends the period of existence of
a corporation is a grant of corporate power. It was so deter-
mined by both this court and the Court of Errors and Ap-
peals in the case of *Attorney-General* v. *Newark Plank Road
Co.*, 36 *Vroom* 51; *S. C. on error, Id.* 603. But it does not
necessarily follow, as it seems to us, that because this statute
confers corporate powers upon those specially chartered cor-
porations which take advantage of its provisions it is not a
general law. Every corporation formed under a general law
of the state, which accepts the powers and franchises granted
to it by that law, becomes as completely vested with the ex-
clusive right to exercise those powers upon the property
which it has acquired, and to enjoy those franchises, as if
they had been conferred upon it by a special charter. For
instance, a street railroad company organized under the gen-
eral law of the state which authorizes the formation of
such corporations, and which has built and is operating a
street railroad through the streets of Jersey City (if any
such there be), is as exclusively the owner of its tracks, rails
and ties, has as exclusive a right to maintain them in their
present location, its power to operate its road is as exclusive,
and its franchise to charge tolls for the carrying of pas-
sengers over its road is as exclusive as are those of the Jersey
City and Bergen Railroad Company. The object of the
constitutional provision appealed to is not to prevent cor-
porations from being vested with exclusive powers, privi-
leges and franchises, but to prevent the legislature from
granting corporate powers, privileges and franchises to one
set of applicants and refusing to another set of applicants
precisely similar corporate powers, privileges and franchises.
It may be that the act of 1876, if it preserved to any cor-

poration which takes advantage of its provisions a power, privilege or franchise which no other corporation of the state of a like character holds or can acquire, would contravene the constitutional provision referred to to that extent; but, assuming this to be so, there is nothing in the language of the act which compels the conclusion that the legislature intended to grant to any corporation, having had such exceptional power, privilege or franchise, the right to further enjoy it, notwithstanding the prohibition of the constitution, and therefore it must be presumed, in construing the act, that it was not the intention of the legislature, in passing it, to preserve to any corporation the right to enjoy such exceptional power, privilege or franchise beyond the term of its existence as originally fixed by its charter or act of incorporation. So construed, the act of 1876 is general, and not special, in its character.

Counsel for the plaintiff have directed our attention to the fact that the Supreme Court of Kansas, in the case of *State, ex rel. County Attorney,* v. *Lawrence Bridge Co.,* 22 *Kan.* 438, held that a statute of that state, similar in its terms to our act of 1876, was a special, and not a general, law. But an examination of the opinion in that case discloses that the situation of the Corporation law of that state, at the time of the decision, was very different from the body of the Corporation law of New Jersey. Chief Justice Horton, delivering the opinion, describes the Kansas extension act as "loaded to overflowing with special charters—some good, others bad, and many vicious—each of which confers corporate powers and privileges distinct, exclusive and separate from every other corporation; and these powers and privileges do not belong to all corporations of the same class, nor can all corporations of the same class, upon the same terms, enjoy like powers and privileges." In New Jersey, it is not the fact that many of the special charters granted by the legislature are "bad" or "vicious." It is true that in some of them, as originally passed, certain special powers and privileges were granted, the enjoyment of which by the corporate grantees was, as subsequent experience has

taught, injurious to the public interests. But the grant of most, if not all, of such objectionable powers and privileges has been revoked by the legislature by general laws now upon the statute books. Nor is it true of this state, except to a very limited extent (if it be true at all), that the special charters granted by our legislature confer corporate powers and privileges, the like of which cannot be obtained and enjoyed by other corporations of the same class and upon the same terms. By our system of general corporation laws almost every conceivable kind of corporate franchise, power and privilege may be obtained by any association of persons who desires to acquire them; and most, if not all, of them may be enjoyed upon the same terms as like franchises, powers and privileges are enjoyed by corporations holding them under special charters. For these reasons it seems to us that the Kansas decision is not a precedent on the question now before us.

But, had we considered that the act of 1876 was special, and therefore unconstitutional, and that the term of the corporate existence of the Jersey City and Bergen Railroad Company was that fixed by its charter, this would not have led us to the conclusion that the city of Jersey City was entitled to eject the defendant company from its possession of the *locus in quo*. As has already been pointed out, it is found by the special verdict that both the defendant company and its lessor, the Consolidated Traction Company, were incorporated under and by virtue of the provisions of the act to authorize the formation of traction companies, passed in 1893. By the first section of that statute it is enacted that any company incorporated under it "shall have power to enter upon any street or highway upon which any street railway, or other railway operated as a street railway, is now or may hereafter be constructed (with the consent of the owner or owners, lessee or lessees of such railway, or of the person or persons operating the same), and * * * maintain and operate such railway." The second section declares that every company incorporated under the act shall have, in addition to numerous powers, privileges and franchises therein speci-

fied, "all other powers necessary to the performance of its duties and the exercise of its privileges imposed or conferred by this act." *Gen. Stat., p.* 3235.

When it is remembered that the primary object in incorporating street railway companies is not the financial benefit to be obtained by their incorporators and their successors from the operation of the railways constructed by them, but the furnishing to the public of a cheap and easy means of intramural transportation, the purpose of those provisions of the act of 1893 which have been referred to seems apparent, and that is to prevent, as far as possible, the people from being deprived of the benefit which comes to them from the use of these public utilities, by the financial or other inability of the owners or operators of them to continue their operation. The statute does not contemplate that the right of a corporation organized under it to maintain and operate a street railway shall depend upon the existence or non-existence of such right in its predecessor in ownership or possession. It deals not only with railways which are owned and operated by corporations *de jure,* having powers and franchises which are efficient to enable them to operate their roads, but with railways which are owned or operated by corporations which never have had a *de jure* existence, and by those whose right to the enjoyment of the powers and franchises originally bestowed upon them has been terminated by efflux of time or otherwise. It deals with the railway as an existing thing, rather than with the question of the rights and powers of the corporation having possession of it. It authorizes a traction company organized under it to take possession of any existing street railway, or railway operated as a street railway, provided it obtains the consent of the party who owns, leases or operates it, and it confers upon such traction company all the powers and franchises necessary for the proper maintenance and operation of the railway after it has acquired its possession, without regard to whether or not its predecessor was clothed with such powers and franchises. In a word, all that a traction company, organized under the act of 1893, needs to acquire from its

predecessor, whether that predecessor operates the railway as owner or as lessee, or by bare right of possession, is its consent; its power to maintain and operate the railway is derived, not from its predecessor, but from the statute itself.

The expiration of the term limited in its charter did not absolutely destroy the corporate existence of the Jersey City and Bergen Railroad Company. That still remained to it by express statutory provision for the purpose of enabling it to settle and close its affairs, and to dispose of and convey its property. *Attorney-General* v. *Newark Plank Road Co.*, 36 *Vroom* 603. At the time when it leased its railway to the Consolidated Traction Company, therefore, it had power to consent that the latter company should take possession of its railway and maintain and operate it, and this it did. Its assignment to the Consolidated Traction Company of the powers, privileges and franchises which had been conferred upon it by the legislature was not requisite to enable the latter company to maintain and operate the railway; and the fact that the assignment was fruitless, because such powers, privileges and franchises had already ceased to exist, could not, of course, deprive the latter company of its own powers, privileges and franchises conferred upon it by direct legislative grant. When the Consolidated Traction Company acquired possession of the railway, therefore, it was clothed with full power to maintain and operate it; and when it, in turn, leased the railway to the defendant company, that company—which was also incorporated under the Traction act of 1893—was clothed with like power by direct grant from the legislature.

The defendant is entitled to judgment on the *postea.*

We deem it well to add that as the only question properly before us on this motion is whether judgment shall be entered for the plaintiff or for the defendant on the special verdict, we have not considered the important matter, discussed by counsel, whether a suit in ejectment is a proper method of putting in issue the question of the corporate existence of the Jersey City and Bergen Railroad Company.