## MONTROSE BANKING COMPANY v. FORD.

1. No statutory or charter lien upon its stock for unpaid purchase-money of said stock exists in favor of a bank chartered under the provisions of the act of the legislature approved December 20, 1893 (Acts 1893, p. 78), where the charter itself was granted on September 4, 1911.
2. The act of December 20, 1893 (Acts 1893, p. 70), being "An act to carry into effect paragraph 18 of section 7 of article 3 of the constitution of 1877, as amended, in relation to chartering of banks, to provide for the incorporation of banking companies by the Secretary of State, and for other purposes," which was later included in the Code of 1895, § 1903, and which is now § 2262, Code of 1910, repealed and rendered ineffective and inoperative the act of the same date to amend the act of 1891, on the same subject.

No. 3114. March 2, 1923.

The transcript of the record in this case (No. 12165) was transmitted to the Supreme Court with the following certificate:

"The Court of Appeals desires instructions from the Supreme Court upon the following questions involved in this case: The holder of certain shares of the capital stock of the Montrose Banking Company, a bank of this State, which was incorporated in the year 1911, and to which the stockholder was indebted for purchase-money of the stock, represented by promissory notes, pledged this stock in the year 1914 to another bank, as security for a debt. In the agreed statement of facts in this case it is stated that 'the charter of the Montrose Banking Company was granted on the 4th day of September, 1911, by Philip Cook, Secretary of State, under the Acts of the Legislature of 1893, Acts of Legislature 1893, approved December 20th, page 78.' On that page of the Acts of 1893 is an act entitled 'an act to amend an act approved October 21st, 1891,' with the following caption, to wit: 'An act to prescribe the method of granting charters to banking companies in this State, to define the powers and liabilities of same, and for other purposes.' This amendment consisted of a provision as to certificates of stock, that 'they can not be transferred except subject to the lien of the bank so long as the stockholder may be indebted or liable to the company. The stock of each stockholder shall be bound for any debts, matured or maturing, that the stockholder may owe or be liable for to the company, either by indorsement, acceptance, or otherwise.' On the date of the approval of this amendatory act (December 20, 1893) an act was approved which was entitled 'an act to carry into effect paragraph 18 of section 7 of article 3 of the constitution of 1877, as amended in relation to the chartering of banks, to provide for the incorporation of banking companies by the Secretary of State, and for other purposes.' Acts 1893, p. 70. This last-mentioned act made no provision for a lien of the kind mentioned above. It was incorporated in the code (Civil Code of 1895, § 1903 et seq.; and see Civil Code of 1910, § 2262 et seq.). The act of the same date, providing for the lien mentioned above, was not codified, nor was the act which it purported to amend.

"1. Did the above-mentioned bank that issued the stock have a statutory or charter lien upon it for the amount due for unpaid purchase-money?

"2.   Did the act of December 20th, 1893, as to incorporation of banking companies, etc., supra (Acts 1893, p. 70), repeal or render ineffective the act of the same date to amend the act of 1891 on the same subject (Acts 1893, p. 78), or did the omission of this last-cited act from the code have the effect of rendering it inoperative?"

*Adams & Camp,* for plaintiff in error.

*Larsen & Crockett,* contra.

RUSSELL, C. J.   The problems presented by the questions certified by the Court of Appeals are of far-reaching importance (as pointed out by Mr. Justice Lamar in the case of *Bank of Culloden* v. *Bank of Forsyth,* 120 *Ga.* 575, 48 S. E. 226, 102 Am. St. R. 115) ; and by reason of former decisions of this court the second question especially is somewhat difficult of solution. An examination of the agreed statement of facts as contained in the record shows that J. E. Smith owned twenty shares of stock in the Montrose Banking Company, which was organized under the laws of Georgia, and the office and place of business of which was at Montrose, Laurens County, Georgia, and that in 1914 the certificates of stock evidencing Smith's ownership of these twenty shares were pledged by J. E. Smith to the Old National Bank of Battle Creek, Michigan, to secure a debt of $15,000. The debt becoming due and remaining unpaid, the pledgee gave notice to the pledgor, and made a regular sale of the stock; and the defendant in error, Ford, became the purchaser. At the sale the Montrose Banking Company gave notice that it had a by-law lien on the stock for the purchase-money of the shares, which was equal to or greater than the then value of the shares. On November 16, 1917, Ford demanded of the Montrose Banking Company that it transfer the stock to himself. The Montrose Banking Company refused to transfer the stock, on the ground that its lien by virtue of the by-law was superior to any right of Ford. Ford then brought suit in the superior court of Laurens County for the market value of the stock at the time of the demand and refusal to transfer, which was alleged and admitted to be $60 per share. Upon the hearing of the case, which was submitted to the judge of the superior court without the intervention of a jury, upon the agreed statement of facts contained in the record, the court rendered a judgment in favor of Ford and

against the defendant Montrose Banking Company for the amount sued for, with interest, after allowing an amendment setting up that whether or not the Old National Bank of Battle Creek, Michigan, had actual or constructive notice of any lien, it took the stock subject to the lien of the Montrose Banking Company, which said banking company had under the act of the General Assembly (Acts of 1893, p. 78). In the bill of exceptions to the Court of Appeals exceptions were taken to this judgment; and upon one of these exceptions is predicated the two questions which have been certified to this court for instructions. The answer to the first question is largely dependent upon the answer to the second; and the two questions are so closely related and interlocked that we shall consider first the second question, to wit: " Did the act of December 20th, 1893, as to incorporation of banking companies, etc., supra (Acts 1893, p. 70), repeal or render ineffective the act of the same date to amend the act of 1891 on the same subject (Acts 1893, p. 78), or did the omission of this last cited act from the code have the effect of rendering it inoperative? "

1. We are of the opinion that the act of December 20th, 1893 (Acts of 1893, p. 70), repealed the act of 1891 (Acts 1891, p. 172), which first provided a general law for the incorporation of banks. We bear in mind the doctrine that the law does not favor repeals by implication; but there is such conflict between the two enactments, the act of 1893 which is entitled " an act to carry into effect paragraph 18 of section 7 of article 3 of the constitution of 1877, as amended, in relation to chartering of banks, to provide for the incorporation of banking companies by the Secretary of State, and for other purposes," and the prior act of October 21st, 1891 (Acts 1891, p. 172), which first prescribed the method of granting charters to banking companies in this State upon application made to the Secretary of State, that there is no other reasonable inference to be drawn than that it was the purpose of the General Assembly, in the passage of the act of December 20th, 1893 (Acts 1893, p. 70), to supersede the method provided by the legislation of 1891 (Acts 1891, p. 172) by the new legislation contained in the act of 1893, supra. We need cite only a few of the essential and irreconcilable differences in the two legislative enactments, to demonstrate that it was clear-

ly the legislative intention, by the passage of the act of 1893 to repeal the act of 1891. Under the act of 1891, in order to organize a bank it was only necessary that one or more individuals subscribe to the capital stock, divided into shares of $100 each, such amount as they themselves might determine as the minimum capital stock, and to pay ten per cent. of such subscribed capital stock, when they were authorized to assume all the liability and responsibility of a chartered bank. No minimum was prescribed by law; and outside of the ten per cent. required to be paid in before commencing business, this legislation left it entirely in the hands of the officers of the corporation " how and in what sums, and at what times and places, any unpaid part of the capital stock may be paid in." It will be seen that under the original act approved October 21, 1891, it was possible for a few citizens to have subscribed some such sum as $500 or $800, and to have commenced a regular banking business with authority to exercise all the powers conveyed by the act, upon a paid-in cash capital of $50 or $80. The general banking act of 1893, approved December 20, 1893 (Acts 1893, p. 70), instead of allowing the creation of an utterly irresponsible banking institution and exposing the public to great risks, expressly prescribes, in section 1, that the declaration necessary to present the application for the charter " must be accompanied by the affidavit of the subscribers, verified by the ordinary of the county, in which it is proposed to do business, that $25,000 of the capital subscribed has been paid by the subscribers, and that the same is in fact held, and is to be used solely for the business and purposes of the corporation;" and further, section 7 (Acts 1893, p. 72) provides, " that no corporation shall be formed under this act without a capital subscribed in good faith of at least fifty thousand dollars, of which not less than twenty per cent., and in no case less than twenty-five thousand dollars, must be paid in cash by the subscribers for stock before the filing the declaration in office of Secretary of State."

It is also to be noticed that the Act of 1891 (Acts 1891, p. 172) was passed in advance of the ratification of the amendment to the constitution, by which the Secretary of State was given the sole power of granting banking charters; whereas the act of 1893 (Acts 1893, p. 70) was passed expressly in pursuance of

and for the purpose of giving effect to the constitutional amendment upon that subject, which had been ratified in the general election of 1892. So that, had the act of 1893 (Acts 1893, p. 78) been approved upon any day subsequent to that on which the general banking law of 1893 (Acts 1893, p. 70) was adopted, we would hold that the effect of the passage of the general banking law of 1893 was to repeal not only the act of 1891 (Acts 1891, p. 172), but to repeal also the amendment thereto contained in the act of 1893 (Acts 1893, p. 78).

It happens that both the general banking law of 1893 and the amendment of the act of 1891 were approved on the same day, December 20, 1893; but we do not think this fact alters the situation as to the legislation now under consideration, in so far as it relates to the future operation of the law. In other words: the amendment of the banking law of 1891, approved December 20, 1893, might be applied to banks chartered before the passage of the banking law of 1893, enacted to carry into effect paragraph 18 of section 7 of article 3 of the constitution,— that is such banks as were chartered before December 20, 1893; for they may have had vested rights. This, however, is aside from the question certified by the Court of Appeals. It is our opinion, that, by reason of the irreconcilable repugnancy and conflict of the two enactments, the passage of the act of 1893 (Acts 1893, p. 70) of itself repealed the pre-existing act of 1891, upon the same subject (Acts 1891, p. 172), and that with the fall of the act sought to be amended also fell the amendment thereto, approved December 20, 1893 (Acts 1893, p. 78).

Since the question of the Court of Appeals goes further, and asks whether the act of 1893 (Acts 1893, p. 70) rendered the prior act and the amendment ineffective, and whether the incorporation of the act of 1893 (Acts 1893, p. 70) into the Code of 1895 rendered the prior act inoperative, we are more completely enabled to answer the question. The incorporation of the act of 1893 (Acts 1893, p. 70) into the Code, and its adoption by the General Assembly, and the omission of the only other act upon the same subject, and of the amendment thereto, was such an expression of an intention on the part of the General Assembly to repeal and supersede the preceding act as to render it ineffective and inoperative. *Central of Ga. Ry. Co.* v. *State*, 104 *Ga.* 831

(2) (31 S. E. 531, 42 L. R. A. 518). Had the bank been chartered prior to the adoption of the Code, the case would be different; but since it is admitted in the agreed statement of facts that the bank was not chartered until September 4, 1911, it could not be chartered except under section 1903 of the Code of 1895 (§ 2262 of Code of 1910), irrespective of the statement, which was agreed to, that it was chartered under the act of 1893 (Acts 1893, p. 78). As said by Mr. Justice Lamar in *Bank of Culloden* v. *Bank of Forsyth,* supra, in which a similar question was presented to that now before us, and the Bank of Culloden was not chartered until October, 1897: " The Bank of Culloden was incorporated under the Civil Code, § 1903, and not under the act of 1891." A mere agreed stipulation in a statement of facts can not supersede the law; and an agreement that something is the law, when in fact such is not the case, will not alter the situation. The bank could not be chartered in 1911 under the act of 1891, as amended by the act of 1893 (Acts 1893, p. 78), any more than since the passage of the act of 1919 can a bank be chartered under the provisions of the act of 1893 (Acts 1893, p. 70) as embodied in the Codes of 1895 and 1910.

So we answer the second question by saying that the passage of the act of December 20, 1893 (Acts 1893, p. 70) repealed the banking act of 1891 (Acts 1891, p. 172), and thereby rendered the act of the same day, to amend the act of 1891 (Acts 1893, p. 78) inoperative and ineffective.

As a resultant from this conclusion we answer the first question in the negative, as expressed in headnote 1.

ATKINSON and HINES, JJ. We concur specially in the result reached, but do not agree to all that is said in the opinion. The act of 1891, as amended by the act of 1893, provided a method of chartering banks in this State. By the act of 1893 another method of chartering banks was established. This latter act was approved upon the same day as the amendment to the act of 1891. Thus the legislature recognized the act of 1891 as existing and of force on the day the act of 1893, providing another method for the chartering of banks, was enacted. Necessarily, under these circumstances, the doctrine of repeal by implication is not applicable. This is true for the reason that when two statutes upon the same subject are passed upon the same date,

it is impossible to say which act repeals the other. But when the act of 1893, providing a full and complete method for the charter of banks, was put by the codifiers into the Code of 1895, which was adopted by statute, the effect was to re-enact this act of 1893 and to create a new statutory method for the chartering of banks, as of the date of the adoption of the Code of 1895. This latter statute including the same subject-matter as the act of 1891, and providing a full and complete method of charter of banks, the act of 1891 was impliedly repealed by the code.