GORMLEY, superintendent of banks, *v.* SEARCY.

676

No. 11067. July 9, 1936.

*Dave M. Parker,* assistant attorney-general, *J. W. Culpepper, N. F. Culpepper,* and *Park & Strozier,* for plaintiff.

*Beck, Goodrich & Beck, Crenshaw, Hansell & Gunby, Jones, Johnston, Russell & Sparks,* and *Ryals, Anderson & Anderson,* for defendant.

Hutcheson, Justice. The Court of Appeals certified to this court the following questions: ■ "Where the special legislative charter of a bank, which was granted on October 26, 1870, for a period of 30 years, and provided that the 'individual property of the stockholder, at the time of suit, shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder' (Acts 1870, pp. 114, 115), was renewed by the secretary of State on October 24, 1900, in accordance with the law of force at that time providing for the renewal of special legislative charters theretofore granted to banking companies (Acts 1893, p. 88, Civil Code of 1910, §§ 2193, 2194, 2195), with the same corporate powers and privileges as set out in the original act of incorporation, 'for the space of 30 years, as to all parts thereof not in conflict with the constitution and laws now or hereafter of force in this State,' were the original provisions of such special charter as to the liability of its stockholders retained after such renewal, even though there was of force in the State at the time of such renewal the general banking act of 1893 (Acts 1893, pp. 72 et seq.), providing for liability of stockholders

in banks as follows: 'each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock, and said stockholders shall be further and additionally individually liable equally and ratably (and not one for another as sureties) to depositors of said corporation for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock; it being the true intent and purpose of this section that, as to depositors for all moneys deposited with said corporation, there shall be an individual liability upon such stockholder in such corporation, over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares; provided, that said liability of the stockholders shall not prevent depositors from having equal rank with all other creditors upon the capital, property, and assets of said bank'? See Civil Code of 1910, § 2270; 164 *Ga.* 790; 167 *Ga.* 811; 172 *Ga.* 342."

■ "Did a bank created by special legislative enactment on October 26, 1870 (Acts 1870, p. 114), prior to the general banking law of 1893 (Acts 1893, p. 72), whose charter contained specific and different provisions as to the liability of its stockholders from that contained in the general banking act of 1893 thereafter passed, by renewing its charter in 1900 for thirty years, in accordance with the law existing at that time (Acts 1893, p. 88, Code of 1910, §§ 2193-2195), with the same corporate powers and privileges as set out in the original act of incorporation, 'except where in conflict with the constitution and laws of this State now or hereafter of force,' adopt the provisions of the existing general banking laws of 1893, relative to liability of stockholders (Code of 1910, § 2270, Code of 1895, § 1911), in that the provisions of the original charter as to the liability of stockholders in such bank were in conflict with such provisions of the general law existing at the time of such renewal as to liability of stockholders in banks?"

■ "Where a bank that was chartered by special legislative act in 1870 for thirty years (Acts 1870, p. 114) renewed its charter in March, 1900, for thirty years, as provided by the act of 1893 (Acts 1893, p. 88, Code of 1910, §§ 2193 et seq.), authorizing the renewal of special bank charters, and then again renewed its charter prior to its expiration in 1930, under existing laws providing for a renewal of special charters granted to banks (Acts

1919, pp. 135, 172, 173, 174, Code of 1933, §§ 13-1101, 13-1106), did such bank thus renewing its charter in 1930 adopt the provisions of the banking act of 1919 (Acts 1919, p. 135; Code of 1933, § 13-1901) as to the liability of stockholders, such bank having a provision in its original charter granted in 1870, as to the liability of its stockholders (Acts 1870, p. 115), different from that provided in the general banking act of 1919, where no reference to stockholders' liability was made in said renewal application or certificate? See references, supra; *Bennett* v. *Wilkes County,* 164 *Ga.* 790; *Toombs* v. *Citizens Bank,* 169 *Ga.* 124."

■ "Where a bank that was chartered by special legislative act in 1870 (Acts 1870, p. 114) amended its charter after the passage of the general banking law of 1893 (Acts 1893, p. 72) by increasing its capital stock and the number of its shares, did it thereby adopt the provisions of the general law in respect to its corporate powers and privileges, especially the provisions of the general law in respect to stockholders' liability, where no mention as to stockholders' liability was made in the amendment to said special legislative charter, and where the provision as to stockholders' liability in the special charter is different from that provided by the general banking law?"

■ "(a) Where the liability of stockholders in a bank was fixed by a special legislative charter in 1870 (Acts of 1870, p. 114), as follows: 'The individual property of the stockholder, at the time of suit, shall be liable for the ultimate payment of the debts of the company in proportion to the amount of stock owned by each stockholder,' which bank was taken over by the superintendent of banks for liquidation in 1933, is the liability of each stockholder therein such a proportion or fraction of the entire indebtedness of the bank as the amount of his stock bears to the whole capital stock of the bank? See *Adkins* v. *Thornton,* 19 *Ga.* 325 (4), 328; *Wheatley* v. *Glover,* 125 *Ga.* 710, 717. (b) Or is the liability of each stockholder in such bank such a proportion or fraction of the entire indebtedness of the bank as the amount of his stock bears to the total indebtedness of the bank? See *Lane* v. *Morris,* 8 *Ga.* 468; *Lane* v. *Harris,* 16 *Ga.* 217; *Branch* v. *Baker,* 53 *Ga.* 502."

The first general legislation in this State on the liability of stockholders appeared in the act of 1843 (Cobb's Digest, 119,

Code of 1863, § 1440, Code of 1873, § 1491), which provided that stockholders in banks were not liable beyond the unpaid balances on their stock. A later act (Ga. L. 1891, p. 172), authorized the secretary of State to grant uniform charters to banks, and provided the same liability of stockholders of banks incorporated thereunder as is provided in the act of 1893 (Ga. L. 1893, p. 72 et seq.), which act is often referred to as the first general act for incorporation of banks, and which repealed the act of 1891. *Montrose Banking Co.* v. *Ford,* 155 *Ga.* 222 (116 S. E. 783). Before the general banking act of 1893 "the General Assembly had no settled policy with regard to the terms upon which such charters should be granted, or any formulated scheme looking to the protection of creditors of this class of institutions. . ." *Reid* v. *DeJarnette,* 123 *Ga.* 787, 791 (51 S. E. 770, 3 Ann. Cas. 787). In 1891 the legislature proposed an amendment to the constitution, which was duly ratified in 1892 (Code, § 2-1818), which provided that "All corporate powers and privileges to banking companies shall be issued and granted by the secretary of State in such manner as shall be prescribed by law." The general banking act of 1893 was passed pursuant to this amendment. At the same session of the General Assembly, and approved on the same day, two other acts were passed. One (Ga. L. 1893, p. 88) provided "That any banking" company "heretofore incorporated by the General Assembly by special act may from time to time renew its charter by filing with the secretary of State a petition," etc., and that the secretary of State shall issue to the petitioning corporation a certificate which, after reciting the act incorporating the petitioning company and the acts amendatory thereto, provides that "the grant of corporate powers and privileges set out in the above recited acts is hereby renewed for the space of thirty years, as to all parts thereof not in conflict with the constitution and laws now or hereafter of force in this State." The other act (Ga. L. 1893, p. 89) provided "That any banking . . company, heretofore incorporated by the General Assembly by special act, may amend its charter so as to acquire any or all of the corporate powers and privileges granted to a like corporation under the acts already or to be hereafter passed, providing for the grant of corporate powers and privileges to such companies by the secretary of State, by filing with the secretary of State a petition," etc., and

then provided that the secretary of State shall issue a certificate granting to such petitioning company an amendment to its charter in the particulars set out in the petition. In order to determine the proper answers to the questions certified, it is necessary to determine the intention of the General Assembly as may appear from the acts of 1893, supra, in view of the constitutional amendment of 1892. These acts, having been enacted at the same session of the General Assembly and dealing with the same subject-matter, are in pari materia and should be construed together as one act. *State* v. *Justices,* 15 *Ga.* 408, 411; *Gillis* v. *Gillis,* 96 *Ga.* 1, 11 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121). It is manifest that the General Assembly intended by these acts to provide a uniform system of banks and banking in this State, in so far as this could be done in view of the special charters theretofore granted, the charter of the Griffin Banking Company involved here being one of these.

It has been held that the general banking act of 1893 did not repeal the provisions of the special charters theretofore granted in reference to stockholders' liability, and the provisions of the general banking act of 1893 in reference thereto did not apply to such special charters, but only to banks chartered under the act. *Latimer* v. *Bennett,* 167 *Ga.* 811 (146 S. E. 762). See *Reid* v. *DeJarnette,* supra; *Wheatley* v. *Glover,* 125 *Ga.* 710 (54 S. E. 626). It may be well to note that in none of these cases had the special charters involved been renewed by the secretary of State, pursuant to the laws providing for the renewal of special bank charters. The acts of 1893, providing by law a method of renewing and amending special charters by the secretary of State, were acts further carrying out the mandate of the constitutional amendment of 1892. From these acts and the general banking act of the same date, and the construction placed thereon by this court, it will be seen that the General Assembly did not intend, at one stroke, to destroy the old system of banks and banking, by repealing or modifying the special charters theretofore granted; but it intended to provide a method for building a new system of uniform banks. To accelerate the accomplishment of the intended result, in view of the special charters, the General Assembly, in providing for the amendment of these special charters, only provided that they should be amended by the adoption of any or all

of the provisions of the general banking act. The General Assembly then provided for the renewal of special charters with the same powers and privileges as originally granted, except those "in conflict with the constitution and laws now or hereafter of force in this State." It is contended, inasmuch as the provision for stockholders' liability in the act of 1893 applied only to banks chartered thereunder, that the provision of the special charter of the Griffin Banking Company as to liability of stockholders, even though in itself inconsistent with the provision of the general banking act, was not inconsistent with the act, as the act had no application to the provisions of special charters. We do not believe this position is tenable, in view of the purpose and intent of the statutes. The general banking act of 1893 did not attempt to express all the rights, powers, and privileges of the banks to be chartered thereunder; but it set forth only those rights, powers, and privileges the acceptance of which would be mandatory upon the banks chartered under the act. Therefore the expression in the act providing for the renewal of special charters with the same powers and privileges originally given, when construed in connection with the limitation thereon, merely means that those powers and privileges not dealt with in the general banking act could be retained; otherwise the charter as renewed must conform to the general law then of force. It follows that question number 1 must be answered in the negative, and number 2 in the affirmative.

We now come to a consideration of question number 3, and the effect of the renewal of the charter of the Griffin Banking Company under the act of 1919 (Acts 1919, pp. 135, 172-174). This act also provided a uniform method of incorporating banks by the secretary of State, created the department of banking, and made various rules and regulations in regard thereto. In said act is contained a provision as to the liability of stockholders. What has been said in reference to the effect of the act of 1893 on special charters theretofore granted by the General Assembly applies likewise to the act of 1919. *Latimer* v. *Bennett,* supra; *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (139 S. E. 566); *Mobley* v. *Phinizy,* 172 *Ga.* 339 (157 S. E. 182). It has also been held that the act of 1919 did not repeal the provisions of the act of 1893 as to the liability of stockholders, as to banks incorporated under that act. *Toombs* v. *Citizens Bank of Waynesboro,* 169 *Ga.*

115, 124 (149 S. E. 645). In this case and those cited just above, the effect of the banking act of 1919 upon the provisions of a special charter which had been renewed pursuant to the section of the act of 1919 providing for the renewal of special charters and those theretofore granted by the secretary of State, was not involved. In none of these cases had the special charters been so renewed. The act of 1919 also contained provisions for amending special charters, similar to that contained in the act of 1893. Code, § 13-1001. The act of 1919 (§ 13-1101), provides that "Any bank, whether incorporated by special act of the General Assembly or by the secretary of State under the general law for the incorporation of banks, may have its charter renewed and its corporate existence extended for a period of thirty years" by the secretary of State, and that "the secretary of State shall issue to the bank a certificate under the seal of the State, renewing its charter for a period of 30 years." § 13-1106. It will be noted that the act of 1919 does not expressly provide for renewal with the same corporate powers as contained in the original charter and the amendments thereto, nor does it expressly provide for renewal "as to all parts thereof not in conflict with the constitution and laws now or hereafter of force in this State." However, the act of 1919, when construed in connection with the history of banking legislation in this State and what has been said above in reference to the act of 1893, and the intention and purpose of the General Assembly in enacting uniform banking laws, must be construed as having a like purpose as that of the act of 1893; and the absence of similar contradistinctive provisions as those contained in the act of 1893 makes no substantial difference in the interpretation to be placed thereon.

In Jersey City v. St. R. Co., 73 N. J. L. 175 (63 Atl. 906), construing a statute of the State of New Jersey which provided "that it shall be lawful for any corporation heretofore or hereafter created under or by virtue of any law of this State, at any time before the expiration of its charter, or the period named in its certificate of organization, to file in the office of the secretary of State a certificate under its common seal, attested by the signature of its presiding officer, declaring its desire that the period of its existence as such corporation shall be extended for any time therein mentioned not exceeding fifty years, and that upon making and

filing such certificate the period of the existence of such corporation shall be extended as declared in such certificate as fully as if the said period had been named in the original charter or certificate of organization of such corporation," as against an attack made upon it to the effect that it was in conflict with the constitutional provision of that State declaring that "the legislature shall pass no special act conferring corporate powers," the Supreme Court of that State said, "The object of the constitutional provision appealed to is not to prevent corporations from being vested with exclusive powers, privileges, and franchises, but to prevent the legislature from granting corporate powers, privileges, and franchises to one set of applicants, and refusing to another set of applicants precisely similar corporate powers, privileges, and franchises. It may be that the act of 1876 [quoted above], if it preserved to any corporation which takes advantage of its provisions, a power, privilege, or franchise which no other corporation of the State, of a like character, holds or can acquire, would contravene the constitutional provision referred to, to that extent; but, assuming this to be so, there is nothing in the language of the act which compels the conclusion that the legislature intended to preserve to any corporation, having had such exceptional power, privilege, or franchise, notwithstanding the prohibition of the constitution; and therefore it must be presumed, in construing the act, that it was not the intention of the legislature in passing it, to preserve to such corporations the right to enjoy such exceptional power, privilege, or franchise beyond the terms of its existence as originally fixed by its charter or act of incorporation. So construed, the act of 1876 is general, and not special, in its character." See also Northern Bank v. Stone, 88 Fed. 413. We are of the opinion that in view of the provision of the constitution of this State (Code § 2-1818) a similar construction should be placed upon the act of 1919, and that a bank renewing its charter under that act makes itself amenable to the general law of force at that time as to the liability of stockholders in banks. It follows that question number 3 should be answered in the affirmative.

In view of the answers heretofore given, it is unnecessary to answer questions 4 and 5.

*All the Justices concur, except Beck, P. J., not participating.*