REID, receiver, *v.* DeJARNETTE. REID, receiver, *v.* YOUNG. REID, receiver, *v.* LAWSON.

123 787
125 716

123 787
f127 114
f127 115

A provision in a charter granted prior to the act of 1893 (Acts 1893, p. 70, Civil Code, §§ 1903–1911), to the promoters of a banking enterprise, to the effect that "each stockholder in said corporation shall be individually liable for the debts of the corporation to the amount of his unpaid subscription to the capital stock of the corporation, and for an additional amount equal to his subscription," is, in view of the policy then adopted by our

General Assembly, of providing in each particular instance under what circumstances and to what extent the owners of stock in such institutions may be held liable for corporate debts, to be understood as imposing individual liability upon such stockholders only as became such by subscribing to the capital stock, and not upon shareholders who by way of succession from the original stockholders became owners of stock.

Argued July 3, — Decided August 4, 1905.

Complaint.    Before Judge Lewis.    Putnam superior court. September 20, 1904.

The Putnam County Banking Company became financially embarrassed in the latter part of the year 1903, and, at the instance of one of its creditors, a receiver was appointed to take charge of its affairs and collect all debts due to it, as well as to institute legal proceedings against its stockholders, to enforce, for the benefit of its creditors, the statutory liability imposed by the charter of the company upon subscribers to its capital stock. In March of the following year, the receiver, A. S. Reid, brought an action against J. B. DeJarnette for $600, alleging that on the date of the failure of the Putnam County Banking Company, and at the time of the creation of its outstanding indebtedness to the creditors for whose benefit the suit was instituted, he was the owner of twelve shares of the capital stock of that company, of the par value of $50 each, and was therefore under a statutory liability to pay to the plaintiff, as receiver, the amount sued for, to be applied to the discharge of the company's indebtedness. The defendant filed a demurrer to the petition, one of the grounds of which was that no right to recover against the defendant was shown, for the reason that it was not alleged that he was at any time a subscriber to the capital stock of the bank, or what was the amount of his stock subscription, "but only that he owned at the time certain debts were contracted by the bank, and at the time of the failure thereof, 12 shares of the capital stock; which allegation, if true, would not, under the law, make him liable in any amount for the debts of the bank." The court sustained this ground of the demurrer and dismissed the action. A like disposition was made by the court of another action which had been brought by the receiver against Robert Young, to recover $1,150, who the plaintiff alleged was the holder of twenty-three shares of the capital stock of the bank on the day of its collapse and during the period within which its outstanding indebtedness had been con-

tracted.    The case was dismissed on motion of the defendant's counsel, on the ground that the petition set forth no cause of action.    Still another suit, based upon similar allegations of fact, was brought by the receiver against Thomas G. Lawson, as the owner of 137 shares of the capital stock of the defunct bank.    He filed an answer in which he set up the special plea that he was not liable to the plaintiff, as receiver, for the amount sued for, or for any other amount, " on account of his being a stockholder in said Putnam County Banking Company, as he was never a subscriber to the stock of the said Putnam County Banking Company, and all the stock he ever owned in said bank was transferred to him by persons who had subscribed for the same and had paid up the full amounts of their subscriptions."    The plaintiff moved to strike this special plea, on the ground that it set forth no legal defense.    The court overruled this motion, and the case proceeded to a trial on the merits.    After the close of the evidence, the court instructed the jury to return a verdict in favor of the defendant, he having fully established his defense that he had never been a subscriber to any of the stock issued by the bank, but had purchased the stock held by him from other persons who had subscribed for the same and who had paid in full their stock subscriptions.    The three cases were brought to this court for review by separate bills of exceptions sued out by the receiver, but were argued together, as the fate of each depends upon the determination of one and the same question of law.

*Joseph H. Hall,* for plaintiff.   *Turner & Adams, Thomas G. Lawson, W. B. Wingfield,* and *Hall & Wimberly,* for defendants.

EVANS, J.   (After stating the facts.)   The Putnam County Banking Company was organized under a special act of incorporation, approved December 24, 1888.    Acts of 1888, p. 89.    It provided that " each stockholder in said corporation shall be individually liable for the debts of the corporation to the amount of his or her unpaid subscription to the capital stock of the corporation, and for an additional amount equal to his subscription."    The question presented for determination is:   Was it the purpose of the General Assembly to impose this individual liability upon each and every person who might become a shareholder of the corporation, by subscribing to its capital stock or by purchase of shares issued to another, or otherwise succeeding to the holdings

of a stockholder who had ceased to be a member of the corpora-tion; or was the legislative intent to fix the statutory liability upon such stockholders only as became such by subscribing to the capital stock? The term "stockholder" is not synonymous with that of "subscriber;" each has a distinct, definite, technical meaning; the latter is employed to denote one who becomes bound by a subscription to the capital stock of a corporation. It is to be presumed that the members of the General Assembly knew what was an "unpaid subscription to the capital stock" of a corporation, when they declared that each stockholder could be called on by creditors to pay, not only his "unpaid subscription to the capital stock of the corporation," but also an "additional amount equal to his subscription." If effect be given to the letter of the act, then the liability imposed was upon those who became stockholders through their voluntary act in subscribing to the capital stock of the banking company and assuming responsibility for the payment of its debts, not only to the extent of their respective stock subscriptions, but for double the amount thereof. The promoters of the enterprise asked for a charter, and it was granted to them upon the terms imposed in the act of incorporation. Upon these terms, and upon these terms only, could the enterprise be launched; the promoters and their associates, by acceptance of the charter, assumed the liability imposed upon them, and the public was given the assurance that they pledged themselves, if the fruition of their hopes to make the enterprise a successful one was not attained, to pay the debts of the banking company out of their own pockets, at least to the extent of putting into the proposed venture twice the amount of the stock subscriptions. The corporation itself was made primarily liable for the payment of its debts; those who subscribed to its capital stock were called on by the General Assembly to be its backers, its guarantors. The argument is advanced by counsel for the plaintiff in error that unless all stockholders (however they may have acquired their holdings) be held liable for the debts of the corporation, its creditors may not be able to collect their demands against it, since many if not all of the subscribers to its capital stock may now be dead, and such estates as they left fully administered. Conceding that such may be the case, we do not feel justified in so stretching the words used in the act

of incorporation as to bring within its operation all stockholders of the bank, whether they became shareholders by subscribing to its capital stock, or by way. of succession from those who originally became bound to pay double the amount of their stock subscriptions, if necessity so to do should ever arise. We can not assume that the General Assembly contemplated that those who accepted the charter and organized under it could 'relieve themselves of the liability they voluntarily assumed by subsequently transferring their stock to others who might, or might not, be solvent and able to respond to the demands of debtors of the corporation. Nor does the act of incorporation provide any scheme whereby this liability might be shifted upon stockholders who purchased stock upon the faith that the act was to be understood as meaning neither more nor less than was said; nor is there any suggestion in the act of a compounding of liability, so that a creditor could treat each successive shareholder as an additional guarantor and, at his election, call upon either past or present stockholders for payment of his demand, or enforce satisfaction from all as one collective body answering to the description of "stockholders." We try to construe, not to legislate. No good reason has been advanced why the words used in the statute under construction should not be given their usual signification and the conclusion reached, that, while an individual liability was imposed upon each of the original shareholders, no provision was made for any further protection of creditors in the event the affairs of the bank might eventually be conducted by persons who succeeded to the rights of the subscribers to its capital stock and in this manner became stockholders.

An examination of the various charters granted to banking institutions prior to, at nearly the same time as, and subsequently to the passage of the special act incorporating the Putnam County Banking company, satisfies us that the General Assembly had no settled policy with regard to the terms upon which such charters should be granted, or any formulated scheme looking to the protection of creditors of this class of institutions. The reported cases which involved a construction of acts imposing an individual liability upon holders of stock in banks bear out this statement, so far as early legislation is concerned. See *Lane* v. *Morris*, 8 *Ga.* 468, 10 *Ga.* 162, 16 *Ga.* 217; *Thornton* v.

*Lane,* 11 *Ga.* 459; *Neal* v. *Moultrie,* 12 *Ga.* 104; *Moultrie* v. *Smiley,* 16 *Ga.* 289; *Robinson* v. *Lane,* 19 *Ga.* 337; *Robinson* v. *Beall,* 26 *Ga.* 17. In 1880 the General Assembly passed an act incorporating the Commercial Bank of Savannah, and the only liability imposed upon its stockholders was for unpaid stock subscriptions. Acts of 1880–1, p. 229. In the following year a charter was granted to another banking company, provision being made that "each stockholder shall be liable for the debts of the bank, created while he is a stockholder in said company, in proportion to the amount of stock held, owned, or subscribed for by him, at the time the debt was created." Ibid. 197. At the same session of the legislature a charter was granted to another institution, on condition that "the stockholders shall be bound and liable as sureties to contribute to the payment of the debts of the bank, each in an amount equal to the par value of the stock held by him at the time of the bank's failure or insolvency, or so much thereof as may be necessary." Ibid. 208. And in amending the charter of a bank previously incorporated, provision was made that "the private property of each and all of the corporators of the said institution for the time being shall be liable for the payment of all deposits made with said institution (and for all debts contracted or incurred by said institution) during their membership therein, in the same manner as in ordinary commercial cases or cases of debt." Ibid. 209. Still another scheme of liability was adopted in incorporating the Citizens' Bank of Augusta. Ibid. 194. In 1886 a charter was granted to the Commercial Bank of Atlanta, the act of incorporation stipulating "That each stockholder in said corporation shall be individually liable for the debts of the corporation to the amount of his or her unpaid subscription to the capital stock of the corporation, and the stockholders of said corporation shall be individually liable to creditors of said corporation to the amount of the capital stock subscribed, or at any time held by them respectively." During the same year other acts of incorporation were passed, in each of which special provision was made as to the liability of shareholders. Ibid. 65, 70. In one of them the "individual property of the stockholder, at the time of suit," was declared to be subject to "the ultimate payment of the debts of the company in proportion to the amount of

stock owned by each stockholder." Ibid. 78.    Different terms of liability were imposed on the stockholders of other banking institutions chartered in 1887.    See Acts of 1886–7, pp. 333, 339, 341, 343, 360, 372.    In the instance last noted, the liability feature was the same as in the act now under consideration. During the session of the legislature at which this act was passed, no less than twenty other charters were granted to banking institutions to be located at various points in the State.    See Acts of 1888, pp. 56–135.    An examination of these charters will disclose the fact that different terms of liability were imposed upon shareholders in each particular instance.    The General Assembly seems not to have been at a loss for appropriate words with which to express the legislative will; and where its intent was to make all classes of stockholders accountable for the debts of the corporation, the intention so to do was clearly conveyed in language indicating that the terms "stockholders," "shareholders," and "subscribers" were not understood as being synonymous, but as having each a precise and independent meaning.    For illustration, the act incorporating the Merchants' and Farmers' Bank of Hogansville declared, "That each stockholder shall be individually liable for the debts and obligations of said corporation to the extent of his or her paid-in stock, at its par value, and, in addition thereto, shall be liable for all debts and obligations of said corporation, to the extent of his or her capital stock, equally and ratably, and not one for another."    At the succeeding session of the legislature as many as fifty-five new banking houses were incorporated, and amendments were made to a number of charters previously granted.    See Acts of 1889, pp. 452–664.    Still the General Assembly pursued the policy of specifying, in each case, under what conditions owners of stock might be held responsible for debts contracted by the corporation, and to what extent they would be liable therefor, if at all. And it was not until the act of 1893, providing for the incorporation of banks (Civil Code, §§ 1903–1911) that the legislature declared a settled policy as to liability of stockholders.

In view of all this legislation on the subject, we can not but conclude that the General Assembly intended each act of incorporation to speak for itself, and to be construed in accordance with the cardinal rule of construction, that words of ordinary

significance are to be given their usual and customary meaning. The particular act we are now called on to construe has irreproachable letter, but is apparently devoid of deducible spirit. We can not undertake to imbue it with this intangible attribute without doing violence to what we conceive to have been the legislative will; and therefore we follow the letter, with the result above announced.

*Judgment in each case affirmed. All the Justices concur, except Simmons, C. J., absent.*