BROOKMAN, administratrix, *v.* RENNOLDS *et al.; et vice versa.*

1. Where the trial judge renders a judgment granting a new trial based
   upon a single ground in the motion, and the respondent brings a bill of
   exceptions, and the defendant in error brings a cross-bill of exceptions,

the assignments of error in the cross-bill relating to questions which will probably arise on another hearing will be decided.

2. Letters of administration granted in another State, authorizing an administratrix to administer "personal property, goods, chattels, and credits," of an intestate who died while a resident of the State in which the letters were issued, are special in character, and do not afford authority to the administratrix to maintain a suit in this State to enjoin the cutting of timber and to recover damages for trespass in cutting and removing the timber from the land.

(*a*) In a suit of the character just mentioned, it is incumbent upon the judge so to frame his charge to the jury as to make it conform to the pleadings and evidence; and the fact that the letters of administration have been admitted in evidence without objection would not authorize the judge to charge that the administratrix was authorized to maintain the suit.

3. In a suit to enjoin the cutting of timber and recover damages for trespass on the realty, where both parties relied upon prescriptive title, and the plaintiff contended that the land in dispute was a certain part of her land lying on the north side of a road which separated it from the main body of her land of which it formed a part, and the defendants contended that the land in dispute was a part of their tract which comprised all the land on the north side of the road, and that they and their predecessors in title had been in actual possession of the land, and a witness for the plaintiff had testified that during the period of the defendants' actual possession the plaintiff's lessees had cut the timber on all of the plaintiff's tract, it was competent to show by the same witness that such lessees did not cut the timber on the land in dispute.

4. In order to admit secondary evidence, it must appear that the primary evidence, for some sufficient cause, is inaccessible to the diligence of the party. The question of diligence is ordinarily addressed to the discretion of the court, which will not be interfered with unless flagrantly abused.

5. One of the defendants' predecessors in title was John M. Tison. A certificate issued by him, signed "John M. Tison, County Surveyor," tending to show the correctness of a map of the plaintiff's lands, was relied upon as a part of the deed under which she was attempting to prescribe. She did not show that John M. Tison was ever in possession of the land in dispute, but contended to the contrary. The defendants produced evidence to show that John M. Tison was in actual possession of the land in dispute during the period covering the date of the certificate. The certificate was tendered after the introduction of such evidence by the defendants. *Held*, that there was no error in admitting the certificate over the objections: (1) that it did not appear that the certificate was made while Tison was in possession; (2) that it was an official certificate, and would not bind him personally.

6. Under the issues presented by the pleadings and evidence, the authority of one of the agents of the plaintiff's intestate to manage and control his lands was a relevant question; and it was not erroneous to admit a paper purporting to be a copy of the map of his lands covering the land in dispute, when offered in connection with other evidence tending to

show that at the time of employment the plaintiff's intestate delivered to the agent the paper as showing the lands he was employed to protect.

(a) The paper contained certain certificates which were not objected to separately; the only objection being- to the evidence in its entirety. Under such objection the admissibility of such certificates will not be considered.

7. The true location of the dividing line between the lands of the plaintiff and the defendants was a matter of dispute, and under the pleadings and evidence there was a question of whether a line had been established by acquiescence by acts and declarations of the parties or their predecessors, or by actual possession of the defendants and their predecessors for a term of seven years; and it was the duty of the court, without request, to charge the law on that subject.

8. The plaintiff's intestate was never in actual possession of the land in dispute, though there was evidence tending to show that he was in constructive possession thereof. There was also evidence to show that the defendants and their predecessors in title were in actual possession of the land in dispute during any period of the plaintiff's constructive possession. Under these circumstances the court, on request, should have charged the jury "that actual possession of land by one person claiming it is inconsistent with the constructive possession of the same land by another claimant."

9. The charge complained of in the fifth ground of the amended motion for new trial did not accurately state the contentions of the defendants, and was somewhat confusing.

10. The charge set out in the tenth division of the opinion was applicable to one phase of the case as made by the pleadings and evidence, and was not open to the objections urged against it in the motion for new trial.

11. The charge set out in the eleventh division of the opinion unduly restricted the period within which the defendants were authorized to prescribe.

12. The prescription provided for in the Civil Code, § 4168, contemplates actual possession for a period of twenty years, and that provided for in § 4169 contemplates possession under color of title for seven years, which may be actual or constructive; and in a case where a party relies upon a prescription based upon both sections, the court should not, in the charge, so confuse the two as to state in effect that, in order to acquire prescription under color of title, the possession relied on as the basis of such prescription must be actual possession of the whole tract.

13. The evidence authorized a charge upon the subject of permissive possession.

14. As the case will go back for another trial, in which the evidence may not be the same, no ruling will be made on the sufficiency of the evidence to support the verdict.

Nos. 837, 838. FEBRUARY 13, 1919. REHEARING DENIED FEBRUARY 24, 1919.

Equitable petition. Before Judge Highsmith. Glynn superior court. December 7, 1917.

*Adams & Adams* and *D. W. Krauss,* for plaintiff.

*Bennet, Twitty & Reese,* for defendants.

ATKINSON, J. Mrs. Marion P. Brookman, alleging herself to be administratrix upon the estate of Henry D. Brookman, deceased, by appointment of the surrogate court in the State of New York, instituted a suit in the State of Georgia, to enjoin the cutting of timber on a described tract of land, and to recover damages on account of trespass in cutting and removing the timber. She also prayed for general relief. The case was tried before a jury, and their verdict was for the plaintiff. The defendants made a motion for a new trial, on numerous grounds. Upon the hearing the judge granted a new trial on one ground. The plaintiff excepted. The defendants filed a cross-bill of exceptions, assigning error on the failure of the judge to grant a new trial on each of the remaining grounds of the motion.

1. In *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 121 (42 S. E. 287, 94 Am. St. R. 99), it was held: "A judgment granting a first new trial will never be reversed unless the law and the facts demanded the verdict rendered; and this is true notwithstanding the grant of a new trial may have been based upon a single ground in the motion, and though this ground may not have been well taken. But where in such a case the defendant in error brings a cross-bill of exceptions, the assignments of error therein relating to matters which will probably arise at another hearing will be decided." Under this ruling the questions made by the cross-bill of exceptions, which may arise on another trial, will be considered. The case differs from *Southwestern R. Co.* v. *Smithville*, 134 *Ga.* 432 (67 S. E. 936).

2. In *Jones* v. *Cliett*, 114 *Ga.* 673 (40 S. E. 719), the administrators of the estate of a person who resided in New York at the time of his death, appointed in the surrogate court of New York, brought an action in this State to recover a described parcel of land with mesne profits and damages alleged to have been sustained by the cutting and removing of timber from the land. On the trial the plaintiffs offered in evidence their letters of administration with the will annexed. It appeared that the will was adjudged by the surrogate court "to be a valid will of personal estate only." The letters recited that there was granted unto the administrators named "full power and authority by these presents to administer and faithfully to dispose of all and singular the said goods, chattels, and credits, and to ask, demand,

recover, and receive the debts which unto the said testator whilst living and at the time of death did belong; and to pay the debts which the said testator did .owe, as far as such goods, chattels, and credits will thereto extend and the law require." The letters were excluded from evidence, on the ground that they were granted for the purpose of administering personalty only, and were insufficient to authorize the plaintiffs to maintain the action; and a nonsuit was granted. On exception it was held: "An administrator with the will annexed, appointed in another State under a judgment admitting the will to ·record as 'a valid will of personalty only,' and authorized by the letters of administration issued to him to administer only the 'goods, chattels, and credits' of the testator, has no authority to institute, in the courts of this State, either an action to recover land and mesne profits, or an action of trespass for the recovery of damages to real property." The principle thus ruled was applied in *Taylor* v. *McKee,* 121 *Ga.* 223 (48 S. E. 943), a somewhat similar case, in which it was held: "Where special letters of administration are presented, limiting the power of the administrator to specific property of the estate of the intestate, his power will not be extended beyond his letters." The principle announced in the cases cited is applicable to the case under consideration. In this case the plaintiff's right to the relief sought depended upon title to the land in dispute. The plaintiff placed her case on alleged title in the estate of her intestate and her letters of administration issued from the surrogate's court of New York. These did not purport to authorize her as administratrix to administer upon any of the estate of the deceased, except "personal property, goods, chattels, and credits." Under the principle of the decisions cited above, these were special letters limited to the administration of specific property, and can not be so extended as to confer authority upon the administratrix to administer real estate of the intestate in this State. It was urged that the decisions cited did not apply, because in those cases the letters were objected to when offered in evidence, whereas in the present case they were admitted without objection; also, that although the letters had been introduced on a former trial of the case, and had been duly filed and recorded in the court since the commencement of the action, no point had ever been made as to their sufficiency as authority for the adminis-

tratrix to maintain the suit. These suggestions do not state any valid basis of distinction. The burden was upon the plaintiff to prove her case, and the defendants had the right at any time to urge that the evidence offered for the purpose was either lacking in some respect, or proved a fact that was fatal to her case. In this instance the letters showed affirmatively that her authority to sue was restricted; and while charging the jury the judge should have so framed his instructions as to adjust them to the issues as presented by the pleadings and evidence. In *Huxford* v. *Southern Pine Co.,* 124 *Ga.* 181, 187 (52 S. E. 439), it was said by Cobb, J.: "A party may allow a deed relied upon by his adversary to go in evidence without objection, but his failure to object does not preclude him from urging in his motion for a new trial that the deed is invalid for some reason appearing on the face of the same, or for other reason appearing in the evidence." The court informed the jury in his charge that the plaintiff occupied the same position as her intestate, and that if he if living had made out such a case as would entitle him to recover, she upon the same facts could recover. It was upon this charge that the court granted a new trial. For reasons stated there was no error in the judge granting a new trial.

3. In this and the succeeding divisions of this opinion assignments of error made in the cross-bill of exceptions will be considered. The plaintiff's intestate and defendants claimed large bodies of land on which was pine timber valuable for sawmill, turpentine, and other purposes, which adjoined each other on one side. That claimed by the defendants was called the "plantation tract," and that claimed by the plaintiff was called the "college tract." The plantation tract, which was alleged to contain 762 acres, lies in the fork of "Turtle River" and "College Creek," both being well-defined tidewater streams. A public road extended from the bridge across Turtle River and the bridge across College Creek, and along the north side of the road was a ditch and embankment on which was a fence constructed by the defendants' predecessors in title and claimed as their southern boundary line. It was contended that the land was thus enclosed and used as a pasture for cattle, and some parts of it were cultivated and occupied by tenants of defendants and their predecessors in title, for a great many years dating back to 1860. The plaintiff claimed

under a deed executed in 1866, purporting to convey 7,073 acres of land to her intestate, in which the land was described by reciting various grants issued by the State to persons other than the plaintiff's intestate and not shown to be his grantors, comprising as many as twenty-eight tracts, and by referring to a designated unrecorded map as showing the boundary of the great tract composed of the several grants. This map shows the road above mentioned, and that the great bulk of the land embraced therein lay on the south side of the road, and that a part thereof amounting to 245 acres extended over and lay on the north side of the road, being also adjacent to College Creek, bordering some distance on the creek and commencing at the bridge, and bordering also along the road in the direction of the Turtle River bridge. The land thus claimed by the plaintiff, located on the north side of the road, constitutes the land in dispute. The plaintiff relied entirely upon a prescriptive title based on the deed above mentioned, and possession of a part of the land on the south side of the road for more than seven years. Neither the plaintiff nor her intestate was ever in actual possession of any part of the land in dispute. The defendants also relied upon prescription: first, by twenty years actual possession based on enclosure of the land by Turtle River, College Creek, and a fence maintained along the public road and use thereof as a pasture, and occupancy of portions thereof by tenants within such enclosure; second, by seven years possession exercised by the maintenance of the enclosure above mentioned, and by enclosure and cultivation of fields and occupancy by tenants on portions of the land in dispute for more than seven years under the will of John M. Tison, deceased, probated in 1883, and a decree of court rendered in 1884, partitioning the plantation tract among devisees named in the will, and successive conveyances from such devisees down to the defendants. The defendants also contended that, whatever might have been the true line, the road had become the boundary line between the plaintiff and defendants by reason of acquiescence by acts and declarations upon the part of the plaintiff's intestate and the defendants and their predecessors in title for more than seven years, and by reason of defendants' actual possession for more than seven years prior to the bringing of the suit. The plaintiff disputed all the claims thus made by the defendants, and the defendants disputed the claims so made

by the plaintiff; and as a consequence both parties were put upon proof of the respective contentions above mentioned. The plaintiff's intestate resided in New York, and made only occasional visits to the property, and during the whole period after his purchase local agents were employed to look after and protect the property. From 1880 up to the trial of the case, one of these agents lived within a few hundred yards of the land in dispute, on the opposite side of College Creek, and had actual notice of whatever acts of possession were exercised by the defendants and their predecessors in title on the plantation tract. The agent employed in 1880 subsequently died, and his son, who resided with him and who had the same information as to possession, became his successor as agent of plaintiff's intestate. While the agent last mentioned was being examined as a witness for the plaintiff he testified: "The timber was cut off the college lands in 1889, and in about four years the Brookmans sold them for timber purposes and leases." The defendants proposed to prove by this witness that the timber was cut on all of the college tract, except the land claimed in the suit to be a part of the college tract and for which the plaintiff is suing, and that the timber on that part was not cut. This evidence was excluded on the ground that it was irrelevant. The evidence, if admitted, would have been a circumstance tending to show that the plaintiff's intestate had knowledge of the defendants' adverse possession up to the road, and also his acquiescence in the division line along the road as claimed by the defendants, and also to qualify the testimony of the witness that the lessees of the plaintiff had cut the timber on all the land claimed as the college tract.

4. The defendants tendered in evidence a certified copy of a lease, executed by certain of the defendants' predecessors in title, to certain water rights along the shore lines or margins from College Creek bridge to Turtle River. This was offered in connection with an affidavit by an agent of the alleged lessee, to the effect that he had made search for the original, and that it was lost or destroyed. The evidence was excluded on objection that it was irrelevant, and that there had been no effort to produce the witness, and that proof of the loss of the original could not be made by affidavit. It is declared in the Civil Code, § 5759: "In order to admit secondary evidence, it must appear that the primary evidence, for some sufficient cause, is not accessible to the

diligence of the party. This showing is made to the court, who will hear the party himself on the question of diligence and the inaccessibility of the primary evidence." In *Turner* v. *Elliott*, 127 *Ga.* 338 (56 S. E. 434), it was held: "The sufficiency of the examination preliminary to the introduction of secondary evidence of a lost original is left largely to the presiding judge; and where he is satisfied and admits secondary evidence, his discretion will not be interfered with, unless clearly abused." *Orr* v. *Dunn*, 145 *Ga.* 137 (88 S. E. 669). The evidence submitted was insufficient to show that the original document was not accessible to the diligence of the party; and the court did not err in its ruling.

5. The plaintiff tendered a certificate dated July 16, 1868, purporting to have been made by "John M. Tison, County Surveyor," and appearing on the map of the college tract, which map purported to have been made by "John M. Tison, County Surveyor," on January 8, 1853. The map in question was contended to be the same to which the plaintiff's grantor referred in the deed executed in 1860. The certificate which was tendered, being subsequent in date, could be no part of the deed, but amounted to a mere declaration. The language of the certificate was: "I hereby certify that I have this day completed a resurvey of the annexed plat of land, and have clearly marked the lines, corners, and stakes around the whole." It was shown that John M. Tison was the first among the defendants' predecessors in title; and while the plaintiff disputed that John M. Tison was ever in possession, the defendants offered evidence to show that he was in possession during a period covering the date on the certificate, upon which evidence they relied in part to establish their prescriptive title referred to in a preceding division of this opinion. There being such evidence, the declaration so made was admissible against the defendants, who were privies in estate of John M. Tison, for the purpose of explaining the character of such possession. It was contended that in order to lay the proper foundation for such declaration, under the rulings in *Carter* v. *Buchannon*, 3 *Ga.* 513, and *Sharp* v. *Hicks*, 94 *Ga.* 624 (3) (21 S. E. 208), the party offering the evidence should have made proof of the facts necessary to lay the foundation for its admission, and that it would not suffice to rely upon proof of the same facts by the other party; also that the declaration by John M. Tison in an official capacity

as surveyor would not bind him personally. The contentions deal more with form than with substance, and afford no reason for excluding the evidence.

6. The plaintiff tendered a map purporting to be a copy of the map referred to in the foregoing division, containing the certificate: "This will certify that this map is a true copy of the said above Tison map or plat on this July 3rd, 1879. [Signed] Geo. H. Day, C. E." Below the certificate the following appeared: "I hereby certify that I have, by the request of Mr. F. D. Scarlett, completed a resurvey of all those tracts of land as the college lands, have plainly marked all lines and established all corners which may have been destroyed. [Signed] R. M. Tison, Surveyor." When the evidence was tendered it was objected to in its entirety as immaterial and irrelevant. The court, being of the opinion that "it may be admissible on the question of adverse possession," overruled the objection. When considered in connection with testimony tending to show that when Mr. Brookman employed the agent (mentioned in a preceding division of this opinion) he delivered this copy map to the agent as showing the land he was employed to look after, the plat was admissible as tending to show the property which the agent was employed to guard. It is a rule of practice that where evidence is objected to in bulk, some of which is admissible and some inadmissible, a ruling admitting the evidence will not be reversed. Had there been an objection that the correctness of the copy had not been proved, or had there been separate objections to the certificates by Geo. H. Day and R. M. Tison, neither of whom appeared to have had any interest or been in possession of the land at the times the certificates were made, different questions would be presented.

7. Under the pleadings and evidence the true location of the dividing line between the plantation tract and the college tract was in dispute; and whether the public road had been established as the dividing line by acquiescence by acts and declarations of the parties and their predecessors in title, or by actual possession of the defendants for the term of seven years as provided in the Civil Code, §§ 3821, 3822, was a question for determination. Therefore it was the duty of the court to charge the law on that subject without a request. These provisions of the law are applicable in cases of this character. *Ivey* v. *Cowart*, 124 *Ga.* 159 (52 S. E. 436,

110 Am. St. R. 160); *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 37, 127 Am. St. R. 212).

8. The plaintiff's intestate was never in actual possession of any part of the land in dispute, though there was evidence to authorize a finding that he was in constructive possession thereof by reason of the deed covering the land, and his actual possession of some other portions of the land embraced in the deed. The evidence also tended to show that the defendants and their predecessors in title were in actual possession of all of the land in dispute, during any period of plaintiff's constructive possession. The court was requested to charge the jury "that actual possession of land by one person claiming it is inconsistent with the constructive possession of the same land by another claimant." This request stated a correct principle of law. It was applicable to the case, and was not covered by the general charge.

9. The charge complained of in the fifth ground of the amended motion for new trial did not accurately state the contentions of the defendants, and was somewhat confusing.

10. The sixth ground of the amended motion for new trial complains of the following charge to the jury: "Now the defendant contends that there is a certain fence running from Turtle River on the one end, Turtle River bridge on one end to College Creek bridge on the other, and that this line of fence and the creek and the river constitute actual adverse possession of this parcel of land in question. So that, gentlemen, you will look to see whether or not this fence, in connection with Turtle River on the one side and College Creek on the other, was such possession as to constitute actual possession, as defined to you by the law. They contend that this was a substantial enclosure, and was such possession as met all of the requirements of the actual adverse possession referred to by the law. Now, gentlemen, that is a question for your determination under the evidence. It is for you, as jurors, applying common sense, to look to the evidence and facts and circumstances in this case, and from that determine whether or not this was such possession (the fence, the creek, and the river together) as measured up to the requirements of actual adverse possession." This charge was adjusted to that phase of the case in which the defendants set up prescriptive title by twenty years actual adverse possession, and was not erroneous for the reasons assigned: (*a*)

that it excluded from the consideration of the jury certain evidence of possession by occupancy and cultivation of particular parts of the land in dispute included within the general enclosure referred to by the judge in his charge; (*b*) that it amounted to an expression of an opinion by the judge that the occupancy and cultivation of such particular parts of the land in dispute would not be actual adverse possession.

11. The court instructed the jury: "Now the defendant contends in addition to that, gentlemen, that John M. Tison made a will conveying this property or bequeathing this property to certain of his children; this was made in 1882, and later probated; and that in 1884 there was a decree of court to divide the property among the heirs to whom it was bequeathed; that later the heirs who had an interest all made a deed to Arabella Tison; and that thereafter, in 1905, the executor of Arabella Tison made and conveyed the property in question—a certain tract of land, including the property in question and the parcel in dispute—to the Downing Company and H. T. McKinnon in 1905; that thereafter, in 1906, McKinnon conveyed his half interest to the Downing Company; and that later, in 1911, the Downing Company conveyed to James Kelley; and that later, in 1913, James Kelley conveyed to Phillip J. Rennolds; and they further contend, gentlemen, that these parties were bona fide purchasers for value, beginning with Arabella Tison, and then the several parties following that were each and severally bona fide purchasers for value, and that between 1892 and the time of the filing of this suit there was such actual adverse possession under these several deeds as color of title to ripen into prescriptive title. That is to say, they claim that these parties, irrespective of what may have been the status of John M. Tison, that these parties have acquired prescriptive title by reason of actual adverse possession for a period of seven years or more, since 1892, and under these several conveyances." There was evidence tending to show unbroken possession of the defendants' predecessor in title continuously after the death of John M. Tison until the institution of the suit. The defendants relied upon such evidence, in connection with the various documents recited by the court, to establish a prescription by seven years possession under color of title. The charge tended to restrict the jury to the consideration of a prescriptive period commencing after 1892; whereas

the defendants were entitled to have submitted to the jury their contention that prescription had ripened in their favor prior to that date.

12. The judge also charged: "If John M. Tison did not have good prescriptive title to the lands, then it is for the determination of the jury whether or not the defendants have acquired good prescriptive title to the land in question, under the conveyances referred to as color of title, by reason of having had actual adverse possession of these lands for a period 'of seven years under these titles as color and under such possession as had the elements of prescriptive title." There was evidence to authorize the jury to find a prescription arising after the death of John M. Tison in favor of the defendants, based on actual adverse possession for a period of twenty years, under the Civil Code, § 4168; also a prescriptive title based on seven years adverse possession under color of title, as provided in the Civil Code, § 4169. In the former case the possession of the whole tract must be actual; in the latter the actual possession need be only a part of the land described in the color of title. The charge complained of did not notice the distinction, and its language is such as to make the impression that, in order to acquire prescription under color of title, the possession relied on as the basis for such prescription must be actual possession as distinguished from constructive possession.

13. Another portion of the charge upon which error was assigned was a concrete statement in which the question was submitted whether or not John M. Tison was in permissive possession, if the jury should find that he was in actual possession of the premises in dispute. The evidence was sufficient to authorize a charge on this subject, and the charge as given was not cause for reversal for any reason assigned.

14. The ruling stated in the fourteenth headnote does not require elaboration.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*