BENNETT, superintendent of banks, *v.* WILKES COUNTY, for use, etc.

1. Where service of a bill of exceptions is acknowledged by several attorneys, one of whom also represented an intervenor who is a necessary party as a defendant to the bill of exceptions, such service binds such intervenor; and the bill of exceptions may be amended in this court by making such intervenor a party defendant in error. Accordingly, the motion of the plaintiff in error to make such intervenor a party defendant is granted, and an order will be entered for this purpose. The motion to dismiss the writ of error is denied.

2. By the charter of the Washington Exchange Bank, which was granted by special act of the legislature on December 22, 1888, each stockholder in said bank is individually liable for its debts to the extent of his or her unpaid stock subscription, and in addition thereto each stockholder is individually liable for the debts of the bank equally and ratably, and not one for another, in an amount equal to the par value of the stock owned at the time the debt was created.

(*a*) The stockholders of this bank are not individually liable to its depositors under the act of 1893 (Civil Code of 1910, § 2270), as this bank did not exercise the privilege granted by this act of amending its charter so as to embrace therein this provision; nor are they thus liable under the act of 1919 (Acts 1919, p. 189), as that act imposes this liability only upon stockholders of banks chartered thereunder.

(*b*) This liability of the stockholders is one in favor of all the creditors of the bank, and not in favor of depositors alone.

3. The individual liability of stockholders for the debts of this bank can be enforced only by the superintendent of banks; and when funds are collected by him thereunder, they are assets of the bank.

4. Such funds shall be paid out by him upon the debts of the bank in the order prescribed by the act of August 16, 1919 (Acts 1919, pp. 135, 158). Debts due by the bank to any county, district, or municipality of this State, including unpaid taxes, are to be paid out of such funds before debts to depositors are paid.

5. The Washington Exchange Bank having been appointed, in December, 1924, a depository of the funds of Wilkes County, under the act of August 16, 1915 (Acts 1915, pp. 441-446), and having become indebted for county funds deposited with it as such depository, the county, under said act, had a lien on all of the assets of such bank, including

---

Appeal and Error, 3 C. J. p. 895, n. 52; p. 1036, n. 58; 4, C. J. p. 304, n. 16.

Banks and Banking, 7 C. J. p. 503, n. 78 New; p. 509, n. 38; p. 510, n. 41; p. 512, n. 65 New; p. 747, n. 39, 40; p. 749, n. 56.

Depositaries, 18 C. J. p. 593, n. 14 New.

the funds arising from the above liability of stockholders for the debts of the bank, and it is entitled to full payment of such indebtedness from the assets of the bank, including such funds, before any payment is to be made to the general creditors, including depositors of said bank.

6. The judgment of the trial judge was in accordance with the principles above ruled, and is therefore affirmed.

No. 5760. SEPTEMBER 17, 1927. REHEARING DENIED OCTOBER 1, 1927.

Injunction. Before Judge Pomeroy. Fulton superior court. November 11, 1926.

*C. N. Davie, Luther Roberts,* and *Norman & Norman,* for plaintiff in error.

*A. W. White* and *C. E. Sutton,* contra.

HINES, J. 1. We are met at the threshold of this case by a motion to dismiss the bill of exceptions, because of lack of a necessary party as a defendant in error. The County of Wilkes, for the use of the National Bank of Wilkes, filed its petition for injunction and other relief against Bennett as State superintendent of banks, and the Washington Exchange Bank. Granade, as tax-collector of said county, intervened, and by proper order his intervention was allowed subject to the right of the "defendant" to demur thereto or to move to disallow the same. The defendants did not demur to this intervention nor move to strike it. One of the attorneys for the plaintiff appears of record as attorney for the intervenor. A final decree was rendered in favor of both the original plaintiff and of the intervenor. To this decree the defendants excepted. In the bill of exceptions the case is described as "Wilkes County, for use, etc., versus T. R. Bennett, superintendent of banks, and the Washington Exchange Bank, Washington, Ga." The bill of exceptions describes the parties thereto as follows: "The defendant, T. R. Bennett, superintendent of banks, names himself herein as plaintiff in error, and names the plaintiff, Wilkes County, for use, etc., as defendant in error in this bill of exceptions." Due and legal service of the bill of exceptions is acknowledged, and this acknowledgment is signed by the attorneys for the plaintiff, including the one of these attorneys who appears of record as attorney for the intervenor, as "attorneys for defendant in error.". The motion to dismiss the bill of exceptions is based upon the ground that the tax-collector is not named as, nor made, a party defendant thereto. In response to the motion to dismiss, the plaintiffs in error move to amend the bill of excep-

tions by making the tax-collector a party defendant.

By the Bleckley act of 1911 (so named because the able and efficient clerk of the Court of Appeals was its author) it is provided "that where a bill of exceptions which can be identified as excepting to a specific judgment is served upon counsel of record in the case, such service shall be held to bind all parties whom said counsel represented in the trial court." This act further declares that "where an acknowledgment of service has been procured, . . the bill of exceptions may be amended in the reviewing court by making any person a party defendant in error to the case who is bound by such service, although such person may not have been named in the bill of exceptions." Acts 1911, p. 149; 5 Park's Code, §§ 6164(a), 6164(b). This statute is remedial, and is to be liberally construed. *Edwards* v. *Wall,* 153 *Ga.* 776, 783 (113 S. E. 190); *Anderson* v. *Haas,* 160 *Ga.* 420 (2) (128 S. E. 178). The acknowledgment of service of the bill of exceptions having been signed by counsel for the tax-collector, he is bound thereby; and by this act he can be made a party defendant, although not named as such in the bill of exceptions. So the motion to dismiss the bill of exceptions is denied, and an order will be entered making the tax-collector a party defendant in error.

2. The Washington Exchange Bank was chartered by the act of December 22, 1888. Acts 1888, p. 73. By the eighth section of said act it is provided "That all the assets of the bank shall be liable for its debts, and each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid stock subscription; and in addition thereto, each stockholder shall be individually liable for the debts of the bank equally and ratably, and not one for another, in an amount equal to the par value of the stock owned by him or her at the time the debt was created." Prior to the act of 1893 (Acts 1893, p. 72, Code of 1895, §§ 1903-1911, Civil Code (1910), § 2270), there was no general law of this State defining the individual liability of stockholders in banks. Where a bank was chartered prior to the passage of that act, whether such individual liability existed depended upon the provisions of the particular charter. *Reid* v. *DeJarnette,* 123 *Ga.* 787, 793 (51 S. E. 770, 3 Ann. Cas. 787); *Wheatley* v. *Glover,* 125 *Ga.* 710 (3) (54 S. E. 626). While any banking corporation of this State, which had been incorporated by special act of the

legislature prior to the act of 1893, was entitled to have its special charter so amended as to incorporate therein the provision of that act defining the individual liability of stockholders to depositors (Civil Code (1910), § 2271 et seq.), the Washington Exchange Bank did not avail itself of this privilege, and did not become liable to depositors under the provision of the act of 1893, now embodied in § 2270. Stockholders of this bank are not liable to the depositors therein under the act of 1919 (Acts 1919, p. 189, 8 Park's Code Supp. 1922, § 2279(a)), for the reason that the liability thereby imposed is only upon stockholders in banks incorporated under the provisions of that act. It follows that the only superadded liability of the stockholders of this bank to its creditors, including depositors, is that set forth in the above extract from its charter. This liability of these stockholders is one in favor of all creditors of the bank, including depositors, and not one in favor of depositors alone. It does not provide a fund for particular creditors, or a particular class of creditors, but provides a general fund for all creditors.

3. In what order shall funds arising from this liability be distributed among the creditors of this bank after it became insolvent and was taken over by the State superintendent of banks for the purpose of liquidation? The proper answer to this question depends upon whether such funds are assets of the bank, or are assets of the creditors of the bank. If these funds are assets of the bank, then they should be paid out according to the order prescribed by law for the payment of the debts of this insolvent bank. If these funds are assets of the creditors of this bank, then they should be distributed among all the creditors of this bank equally and ratably, under the above provision of its charter. Prior to the passage of the act of December 18, 1894 (Acts 1894, p. 76, Civil Code (1910), § 2249), the individual liability of a stockholder in a bank was not considered an asset of the bank, and the assignee or receiver of the bank could not enforce such liability. Only the creditors of the bank, in whose favor such liability existed, had the right to assert the same. *Lane* v. *Morris,* 8 *Ga.* 468 (7); *Swicord* v. *Crawford,* 148 *Ga.* 719 (98 S. E. 343). But by the above act of 1894 it is expressly declared that such individual liability is "an asset of such corporation, to be enforced by the assignee, receiver, or other officer having the legal right to collect,

marshal, and distribute the assets of such failed corporation." Civil Code (1910), § 2249. Accordingly this court has held that the individual liability of the stockholders to the creditors of a bank was, upon its insolvency, an asset of the bank, and, prior to the act of 1919, creating the banking department of this State, was enforceable in a suit or suits brought by its receivers. *Lamar* v. *Taylor,* 141 *Ga.* 227 (80 S. E. 1085); *Harris* v. *Taylor,* 148 *Ga.* 663 (98 S. E. 86); *Brookman* v. *Rennolds,* 148 *Ga.* 721 (98 S. E. 543). Since the passage of that act, when the superintendent of banks takes possession of an insolvent bank for the purpose of liquidating its affairs, he acts in the capacity of a statutory receiver. *Bennett* v. *Wheatley,* 154 *Ga.* 591, 595 (115 S. E. 83). The purpose of the provision of the act authorizing the superintendent to take possession of an insolvent bank for liquidation "is to protect the possession of the assets of the bank by the superintendent from interference by any legal proceedings, such as one for receivership, by levy of process upon such assets, or any proceedings by which the possession of the superintendent will be disturbed." *Berrien County Bank* v. *Alexander,* 154 *Ga.* 775 (115 S. E. 648); *Bennett* v. *Green,* 156 *Ga.* 572, 578 (119 S. E. 620). Now the superintendent of banks is the only officer who can enforce such liability; and the act of 1919 outlaws suits for receivers, not brought by him. *Fite* v. *Henson,* 157 *Ga.* 679 (122 S. E. 412). It is thus deducible from the authorities cited above that the superintendent, when he took possession of this insolvent bank, was authorized as such statutory receiver to collect from the stockholders the above liability imposed upon them under the eighth section of the charter of this bank. It further follows that after he collected these funds, he held them as assets of the bank for all its creditors, and that he must pay them out in the order provided by law. We do not mean to hold that where liability of stockholders is to depositors alone, the funds arising from such liability can be diverted from depositors and distributed among other creditors. To avoid being misunderstood, we repeat that when such liability is to creditors generally, then funds arising from such liability must be distributed in the order provided by law for the assets of the bank.

4. The superintendent has ordered the distribution of a forty per cent. dividend from said funds to the depositors of the bank without lien, and the payment of this dividend will practically con-

sume all of said funds. By this order the County of Wilkes was excluded from sharing in the distribution of said funds as a depositor or creditor of the bank; and it brought this suit for the use of the National Bank of Wilkes, to whom it assigned its claim, upon the ground that, under the law, it is entitled to a priority of payment from said funds, or at least that it is entitled to share pro rata in its distribution with other depositors in said bank. This claim of priority is based upon two grounds, one of which is that when this bank became insolvent the fund arising from the above liability of the stockholders should be distributed according to the statute fixing the priority of payment of claims against an insolvent bank, which statute gives the county a priority over claims of depositors of the bank; and the other ground is that under act of the legislature abolishing the office of county treasurer of Wilkes County, and authorizing the county to select a bank as a depository of its funds, the county selected this bank as such depository, and that this act gives the county a lien upon all of the assets of the bank, superior to the depositors to whom these funds have been ordered paid. This brings us to consider and determine how the funds arising from the enforcement of the liability of the stockholders under the charter of this bank should be distributed as between the county and the depositors, when the bank became insolvent. We have seen that this liability runs in favor of the general creditors of the bank as well as to its depositors, and the funds arising therefrom are assets of the bank. By the act of August 16, 1919 (Acts 1919, pp. 135, 159, 8 Park's Code Supp. 1922, § 2268(s)), it is provided: "The order of paying off the debts of an insolvent bank shall be as follows:

1.  Debts due the State of Georgia.

2.  Debts due any county, district, or municipality of the State, including unpaid taxes.

3.  Debts due the United States.

4.  The expenses of liquidation, including the compensation of agents and attorneys.

5.  Debts due by the bank as trustee or other fiduciary, and other claims of like character.

6.  Judgments and debts secured by lien to the extent of the value of such lien, not void or voidable under the provisions of this act or the law of Georgia; judgments and liens to have the same force, rank, and dignity prescribed by law.

7.   Debts due to depositors and other contractual liabilities pro rata.

8.   Unliquidated claims for damages and the like."

By the act of August 26, 1925 (Acts 1925, pp. 119, 129), the act of 1919 was amended by striking from the above provisions, "debts due the United States," and "the expenses of liquidation, including the compensation of agents and attorneys." Clearly, under the provisions of the act of 1919, which provided the order of the payment of debts at the time this bank was taken possession of by the superintendent, and by that act as amended by the act of 1925, debts due any county rank second, and are inferior in priority only to debts due the State of Georgia.

The fund arising from the liability of the stockholders of this bank is, as we have seen, one in favor of all creditors of the bank, and is a general fund provided for the payment of all the debts of the insolvent bank. This being so, the debt due by the bank to the County of Wilkes is entitled to priority of payment over the depositors of the bank, to whom the superintendent of banks ordered this fund paid. In *Robinson* v. *Bank of Darien,* 18 *Ga.* 65, it was held: "The sovereign right of the State to priority of payment out of the effects of an insolvent is based upon the common law, and was adopted by the act of 1784, which introduces into the jurisprudence of Georgia the whole body of the common law, not inconsistent with our new frame of government, and subject, of course, to legislative modification. It is a wholesome right, and as such should receive the sanction and approbation of the courts." It was further held that such right of priority "is necessary for the protection of the public revenue, so as to enable the government to accomplish the end of its institution." *Seay* v. *Bank of Rome,* 66 *Ga.* 609, 616; *Booth* v. *State,* 131 *Ga.* 750 (2) (63 S. E. 502); *Central Bank and Trust Corporation* v. *State,* 139 *Ga.* 54, 59 (76 S. E. 587). By parity of reasoning the same necessity exists of giving to counties priority of payment for their revenues deposited in banks, so as to enable the county governments to function for the purposes for which they are established.

5.   The office of treasurer of Wilkes County was abolished from and after December 31, 1916. Acts 1915, p. 447. By the act of August 16, 1915, the ordinary of Wilkes County was authorized and required to select a depository of all funds of the County of

Wilkes. The depository so selected was required to receive all funds due the county, and to pay these funds out on warrants drawn by the proper officers. The depository was further required to give bond "for the faithful performance of all the duties and obligations devolving by law upon such depository," and for the faithful keeping and accounting for said funds according to law. The act authorizing the selection of such depository further provided "That the County of Wilkes shall have a lien on all the assets of such depository, superior to any other lien, except the lien which may exist in favor of the State of Georgia, and of the United States of America, and shall be entitled to full payment from the assets of such depository for any and all funds belonging to said county which may be in the hands of such depository, before any payment be made to general creditors." Acts 1915, pp. 441-446. On the first Monday in December, 1924, the Washington Exchange Bank was appointed, for a term of two years, as such depository of the funds of Wilkes County, and gave bond as required by said act. This bank continued to act as such depository of the funds of said county until October 8, 1925, when it closed its doors, and was taken over by the State superintendent of banks, for the purpose of liquidation. At the time of its failure, the bank, as such depository, was indebted to the County of Wilkes in the sum of $19,517.28. The greater portion of this sum arose from deposits of funds of the county with the bank prior to August 1, 1925. The county contends that under the act of 1915 it is entitled to be paid from the funds arising from said liability of the stockholders, under the charter of this bank, before any payment can be made therefrom to the general creditors of the bank. The superintendent denies this, and contends that the fund arising from the liability of the stockholders, under the eighth section of the charter of this bank, was raised to pay depositors; and that under the act of August 26, 1925, these funds should not be paid to the county, as it held a preference or priority given it by the act of 1915. By the act of 1915 the lien given the county is on all the assets of the depository, and the priority of payment given to the county is one from such assets. Do the funds arising from this superadded liability of stockholders of the bank constitute a part of its assets? We have undertaken above to show that funds arising from this liability of the stockholders of this

bank are assets of the bank. It therefore follows that the county had a lien upon these assets, under the act of 1915, and is entitled to the payment of its debt against the bank from these assets, before the same can be applied to the payment of depositors of this insolvent bank.

6. No exception is taken to so much of the decree as directed the payment to the tax-collector of the county of the tax moneys deposited by him in this bank; and for this reason we are not called upon to make any ruling upon the correctness of this part of the decree.

Applying the principles above ruled, we are of the opinion that the trial judge properly ruled that the debt due by this insolvent bank to the county for its revenues deposited in this bank should be paid in preference to the claims of the depositors.

*Judgment affirmed. All the Justices concur, except Russell, C. J., disqualified.*