MOBLEY, superintendent of banks, *v.* PHINIZY, executrix, *et al.*

340

*C. N. Davie* and *J. F. Kemp,* for plaintiff in error.

*Hull, Barrett & Willingham, W. A. Slaton, Lee, Congdon & Fulcher, I. S. Peebles Jr., Hamilton Phinizy, Cumming & Harper,* and *George Hains,* contra.

Russell, C. J., being disqualified, Judge John B. Hutcheson, of the Stone Mountain Circuit, was designated for this case.

Hutcheson, J.  Jacob Phinizy died testate on March 30, 1924. His executors filed a bill in Richmond superior court, to marshal the assets of his estate.  This proceeding was long, involved, and complicated.  A decree therein was rendered on January 13, 1926. Before his death Jacob Phinizy owned 33 shares of the stock of the Washington Exchange Bank, which stood in his name.  At the time of his death these shares were pledged to the Georgia Railroad Bank.  This pledgee, with the concurrence of his executors, sold these 33 shares to one Golsan, who in turn sold them to M. T. Gresham.  A transfer thereof was made on the books of the bank from Jacob Phinizy to M. T. Gresham on July 14, 1925, which date was prior to but within six months of the date of the failure of said bank on October 7, 1925.  Bennett as superintendent of banks was made a party to the proceeding mentioned above.  By said final decree, the remaining assets of the estate of Jacob Phinizy were turned over to Billups Phinizy as trustee for Marion Daniel Phinizy, in settlement of a claim to which the court held that Marion Daniel Phinizy was entitled; said assets to be held by the trustee and his successors in office.  The decree further provided for the payment of the debts of Jacob Phinizy ratably and pro-, portionately as set out therein.  Said decree further provided for "any valid claims which may be established in favor of T. R. Ben-

nett as superintendent of banks of the State of Georgia, in charge of liquidating the affairs of Washington Exchange Bank, of Washington, Georgia, on a stock assessment of $3,300, predicated on the ownership of 33 shares of the capital stock of said bank by said Jacob Phinizy at the time of his death; provided that it is adjudged and decreed in this proceeding that said superintendent of banks has a valid claim for said sum of thirty-three hundred dollars, or any portion thereof."

The original intervention by the superintendent of banks was filed with the end in view of establishing such legal liability on the part of the estate of Jacob Phinizy, and hence under the terms of said decree on the part of Charles H. Phinizy as trustee and ex-officio administrator for Marion Daniel Phinizy, Billups Phinizy having died and having been succeeded by said Charles H. Phinizy as trustee for Marion Daniel Phinizy, and Marion Daniel Phinizy having also died. To this intervention, based on the 33 shares owned by Jacob Phinizy individually, a demurrer was filed by said trustee and ex-officio administrator of Marion Daniel Phinizy; and a response of Sallie D. Phinizy and Coles Phinizy, executors of Jacob Phinizy, was filed on August 7, 1929. In this demurrer it was set up that the intervention set forth no cause of action against said trustee; that it failed to show under what provision of law it is claimed that said trustee is liable; and that it failed to show what debts, if any, due by Washington Exchange Bank on July 14, 1924, the date on which the stock was transferred on the books of said bank to M. T. Gresham, were unpaid. The demurrer contained other grounds which it is unnecessary to set forth in order to reach a decision in this case. The grounds of demurrer just stated were sustained by the trial judge. To this order the superintendent excepted.

On July 20, 1929, the superintendent of banks filed an intervention termed by him as an amendment to the pending intervention as to the 33 shares, in which he for the first time attempted to enforce certain alleged rights growing out of the ownership, as hereinafter described, of 146 shares in Washington Exchange Bank. This so-called amendment was not tendered to the court for allowance until December 11, 1929. Both dates were more than five years after the date of the death of Jacob Phinizy, and over three years after the superintendent of banks had been made a party to the

bill to marshal the assets, and more than three years after the date of the final decree on January 13, 1926. During his lifetime and for many years prior to his death, Jacob Phinizy had acted as the sole trustee of Marion Daniel Phinizy (his brother), a person non compos mentis, under the terms of the will of their father. Among the assets of this trust estate were 146 shares of the stock of Washington Exchange Bank. Upon the death of Jacob Phinizy, Billups Phinizy became the sole trustee of said Marion Daniel Phinizy. Under the terms of the will these 146 shares of stock were transferred by the executors of Jacob Phinizy to Billups Phinizy as trustee for said Marion Daniel Phinizy, and this transfer was entered on the books of said bank on June 24, 1924, more than six months prior to the date of the failure of said bank. Billups Phinizy as trustee subsequently sold these 146 shares, and they were transferred on the books of the bank to M. T. Gresham on July 14, 1925, which was prior to but within six months of the date of the failure of said bank. The superintendent of banks on behalf of the Washington Exchange Bank filed a proceeding in the superior court of Clarke County against Billups Phinizy, as trustee, on an alleged liability growing out of the ownership of the identical 146 shares. Before this proceeding was heard, Billups Phinizy died, and Charles H. Phinizy succeeded him as sole trustee for Marion Daniel Phinizy. A demurrer to said petition was filed by said trustee, which was sustained, and an appeal from that decison is now being prosecuted by the superintendent of banks in this court.

Although full knowledge was had by the superintendent of banks and his attorneys of the proceedings in Richmond superior court with reference to the estate of Jacob Phinizy, no action of any kind with reference to the 146 shares was taken until the tendering of said amendment, and no claim, formal or informal, had ever been made prior to a very few days before July 20, 1929, other than as involved in the Clarke county litigation. The superior court of Richmond county refused to allow the amendment to the intervention based on the 146 shares of stock, and on December 16, 1929, passed its order disallowing the same upon the grounds, among others, that "said proposed amendment seeks to set aside a final judgment and decree of this court, which was rendered more than three years prior to the presentation, urging, or filing of such

proposed amendment," and that the same "sets forth an entirely new, separate, and distinct cause of action entirely unconnected with the alleged cause of action based on the thirty-three share issue." To this judgment the superintendent of banks excepted. Thus two separate and distinct questions are presented for decision by this court, namely: (1) Was the court correct in sustaining the portions of the demurrer which it did sustain to the intervention filed by the superintendent of banks based on the thirty-three share issue? (2) Was the court correct in refusing to allow the filing of the amendment to the intervention, based on the one hundred and forty-six share issue?

■ We deal first with the demurrer to the intervention filed by the superintendent as to the 33 shares. The record shows that the 33 shares owned by Jacob Phinizy were transferred out of his estate to M. T. Gresham on July 14, 1925, which was prior to but within six months of the date of the failure of the Washington Exchange Bank, namely October 7, 1925. By the charter granted to this bank by the legislature on December 22, 1888, the liability of stockholders was fixed by section 8 thereof, as follows: "That all the assets of the bank shall be liable for its debts, and each stockholder shall be individually liable for the debts of the corporation to the extent of his or her unpaid stock subscription; and in addition thereto, each stockholder shall be individually liable for the debts of the bank, equally and ratably, and not one for another, in an amount equal to the par value of the stock owned by him or her at the time the debt was created." Acts 1888, p. 72. The Washington Exchange Bank was chartered before there was any general law establishing the liability of stockholders. The first general law establishing such liability was passed in 1893. Acts 1893, p. 72; Code of 1895, §§ 103-111; Civil Code (1910), § 2270. There was no general law defining the individual liability of stockholders before this date. *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (139 S. E. 566). Where a bank was chartered prior to the passage of that act, whether such individual liability existed depended upon the provisions of the particular charter. *Reid* v. *DeJarnette,* 123 *Ga.* 787, 793 (51 S. E. 770, 3 Ann. Cas. 1117); *Wheatley* v. *Glover,* 125 *Ga.* 710 (3) (54 S. E. 626). Therefore the liability of the stockholders of this bank was only for debts which were due by the bank at the time such stockholder owned

stock therein, and not for debts which were created after such stockholder had ceased to own such stock, and had regularly transferred the same on the books of the bank. While any banking corporation in this State, which had been incorporated by special act of the legislature prior to the act of 1893, was entitled to have its special charter so amended as to incorporate therein the provisions of that act as to the individual liability of stockholders, the Washington Exchange Bank did not avail itself of this privilege, and did not become liable to depositors under the act of 1893. *Bennett* v. *Wilkes County,* supra. There was no liability of the stockholders of this bank, other than that provided by its charter. So we are of the opinion that the court committed no error in sustaining the demurrer filed by Charles H. Phinizy. The intervention filed by plaintiff in error fails to show that debts, if any, were due by the bank on July 14, 1925, the date on which these 33 shares of stock were transferred on the books of the bank to Gresham. In other words, it is not alleged that there was any indebtedness against the bank when Phinizy ceased to be a stockholder by transferring his stock.

██ Was the court correct in refusing to allow the filing of the amendment to the intervention, based on the 146-share issue? Under the facts set out above, and under the ruling in the first division of this opinion, what has been said as to the 33 shares of stock is applicable to the 146 shares of stock so far as stockholder's liability is concerned. The record shows that the superintendent of banks filed a proceeding in Clarke superior court, against Billups Phinizy as trustee for Marion Daniel Phinizy, on an alleged liability growing out of the ownership of the same 146 shares. A demurrer to said petition was sustained, and an appeal from that judgment is now being prosecuted by the superintendent in this court. On December 16, 1925, the executors of Jacob Phinizy filed in Richmond superior court a bill against Billups Phinizy and others, to marshal the assets of Jacob Phinizy. It was prayed that the superintendent of banks be made a party; and order of court was taken, requiring the superintendent of banks to show cause why he should not be made a party plaintiff. This hearing was set for December 28, 1925. The record shows that the superintendent of banks or his attorneys received a copy of said bill and order. On January 13, 1926, a decree was rendered, ordering payment of cer-

tain debts and legacies under the will of Jacob Phinizy. The court had embodied in its decree the following:

"In addition to the payment of the expenses of administration hereinabove approved, said Sallie Dunbar Phinizy and Coles Phinizy, as executrix and executor aforesaid, are hereby authorized to pay such additional expenses as may be incurred in connection with the final winding up of said estate and the obtaining of their discharge. For the purpose of receiving their supplemental and final report and granting their discharge, and for the purpose of passing upon any additional sales that may in the meanwhile be recommended by them, and for the further purpose of passing upon any matters which have not been adjudicated herein, including the possible claims in favor of Mrs. Anne Clanton Phinizy Legett, and the State Superintendent of Banks, as set forth above, this proceeding shall be kept open as pending before this court, and jurisdiction is hereby retained for all such purposes, and all further orders herein may be passed without the necessity of formal notice or further service except as may be specifically directed by the court; but as to all matters herein adjudicated this decree is final, conclusive, and binding in all respects as to all persons and parties."

On July 20, 1929, the superintendent of banks filed his intervention as to the 33 shares of stock. An amendment to this intervention was tendered on December 11, 1929. This was more than three years after the superintendent of banks had been made a party to the bill to marshal the assets, and more than three years after the date of the final decree therein. In this amendment the superintendent seeks to impose the stockholder's liability as to the 146 shares of stock, hereinbefore referred to. It also discloses that a suit had been brought by the superintendent of banks in Clarke superior court, to impose this liability, and that judgment had been rendered denying his right to recover, from which judgment he had appealed. This amendment seeks to set aside a final decree and judgment which was rendered more than three years prior to its presentation for filing. "All proceedings of every kind in any court of this State, to set aside judgments or decrees of the courts, must be made within three years from the rendering of said judgments or decrees." Civil Code (1910), § 4358; *In re Bradley*, 64 *Ga.* 536; *Plumb* v. *Tucker*, 64 *Ga.* 497. Furthermore, the tendered

amendment seeks to set up a new cause of action distinct from the one involving the 33 shares of stock. "No amendment adding a new and distinct cause of action, or new and distinct parties, shall be allowed unless expressly provided for by law." Civil Code (1910), § 5683. The original intervention claims that the 33 shares of stock were owned by Jacob Phinizy in his own right, and were sold and transferred by his executors in six months of the date of the failure of the bank. The offered amendment embodied a claim on the 146 shares, which were owned by Jacob Phinizy, not individually, but as trustee for Marion Daniel Phinizy, and which were transferred on the books of the bank to Billups Phinizy as trustee for Marion Daniel Phinizy more than six months prior to the failure of the bank. This was not a sale, but a transfer to a successor in office of trustee, and no provision was made therefor in the final decree of January 13, 1926, as to these 146 shares. For the reasons set forth above, the trial judge did not err in refusing to allow said amendment.

*Judgment affirmed. All the Justices concur.*